398 A.2d 658

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Arol E. HOFFMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1978.

Decided Jan. 26, 1979.

Reargument Denied March 19, 1979.

444

Taylor P. Andrews, Public Defender, Carlisle, submitted a brief for appellant.

Edgar B. Bayley, District Attorney, Camp Hill, for Com., appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HESTER, Judge:

Following a three-day trial by jury, appellant was found guilty of two counts of theft by failure to make the required disposition of funds received. 18 Pa.C.S. § 3927 and four counts of the sale of unregistered securities, 70 P.S. § 1–201. Post-verdict motions were filed and denied and appellant was sentenced to a term of 1½ to 4 years in prison.

The facts underlying appellant's conviction are as follows:

Appellant organized a corporation in the early 1970's named "Browse-a-While Gift Shoppes, Inc." This enterprise had a unique feature. Instead of procuring capital through the sale of shares in the corporation, appellant devised a plan called an "Inventory Participation Plan" (IPP) whereby funds invested in the corporation would be used to directly purchase inventory. The investors instead of being shareholders and having some control in the operation of the corporation, would be considered only general creditors of the corporation. The registered prospectus (written by appellant) used to entice investors, promised that monies procured through IPP would be used to purchase only inventory and that the inventory on hand would always be equal in value to the total investment in IPP. The IPP guaranteed a minimum fixed return of 6% on the investment.

From 1972 to 1975, more than 100 investors bought shares in IPP and the total dollar amount invested exceeded $500,-000.00. However, it seems that the company's losses kept pace with the investments; progressing from $7,000 in 1972 to $250,000 in 1975. Inevitably, bankruptcy resulted. The Receiver found that appellant kept no ledgers or books but instead used his checks to keep track of where the money was going. The Receiver also found evidence to indicate that large sums of invested money were directed to appellant's own use and, when things started going bad, appellant started to solicit additional funds by issuing promissory notes through the corporation. These notes, however, were never registered.

With the discovery of these seemingly improper actions, the receiver instituted criminal charges in late 1976 with the eventual aforementioned result. This appeal followed.

Appellant first asserts that it was error for the court to refuse to allow certain voir dire questions to prospective jurors.

The court refused to permit the following questions to be asked:

4. Has anybody ever served on a jury panel before and how many times for criminal cases in the past two years?

5A. Does anybody have preconceived ideas about bankruptcy?

6. Would anybody have trouble understanding evidence of co-mingling corporate and personal funds?

7. Would anybody feel so much sympathy for the Commonwealth's witnesses, who lost huge amounts of money, that they would be unable to listen to the evidence objectively?

8. Do you realize that Mr. Hoffman (appellant) is presumed innocent until proven guilty?

9. Do you realize that Mr. Hoffman has no duty to come forward with the evidence to show his innocence?

10. Has anybody been an investor in intra-state offerings of corporations and lost money from their investments?

16. If you were in favor of a not-guilty verdict, would you change your mind because a majority of the jurors thought him guilty? (T. 6–12)

The purpose of examining jurors under voir dire is to secure a competent, fair, impartial and unprejudiced jury. *Commonwealth v. Perea,* 252 Pa.Super. 272, 381 A.2d 494 (1977). The scope of voir dire should be strictly confined to determining whether jurors are qualified and whether a juror has formed a fixed opinion or may be otherwise subject to disqualification for cause. *Commonwealth v. McGrew,* 375 Pa. 518, 100 A.2d 467 (1953). We must also bear in mind the well-settled principal that the scope of a voir dire examination rests in the sound discretion of the

trial judge and his decisions should not be reversed except in a case of palpable error. *Commonwealth v. McGrew,* supra; *Commonwealth v. Bibalo,* 375 Pa. 257, 100 A.2d 45 (1953).

█ It was clearly proper for the court to deny questions 6, 7, 8, 9 and 16. These questions covered subject matter which the court would deal with in its charge to the jury. *Commonwealth v. Perea,* supra.

Question 4 was properly refused on the authority of *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973) where the court held "There is no reasonable correlation between a juror's prior jury service and his ability to render a fair and just verdict in the instant case."

Question 5 was denied because the court thought it nebulous and collateral to the allowed focus of the inquiry. We agree especially where the court permitted counsel to ask whether any member of the jury had lost money because of a debt or bankruptcy.

We think question 10 was also properly refused; the subject matter was sufficiently covered in the part of question 5 which the court permitted to be asked.

Thus we conclude that the first contention is without merit.

█ Appellant next contends that since the informations charge that the theft offenses were committed before May of 1974, the court erred when it allowed testimony to come in relating to missing sales receipts from September to December, 1975. *That,* appellant continues, was not only irrelevant but also tended to show criminal activity on his part for which he was not charged.

Appellant relies on the proposition that evidence of criminal activity unconnected with that for which an accused stands charged may not be introduced to demonstrate a predisposition toward criminal conduct. See *Commonwealth v. Terrell,* 234 Pa.Super. 325, 339 A.2d 112 (1975).

We believe, however, that the above principal has no application to this case.

The crime charged (theft by failure to make required disposition of funds received) required proof of not only the dates when the money was invested, but also proof of appellant's intentional misuse of the funds received. The dates charged in the information were the dates the money was received by appellant from the investors. These dates were the only dates which could be fixed with particularity. The misuse of those funds occurred over a period of time. We believe, therefore, that the evidence elicited about the missing sales receipts in 1975 was relevant and proper proof in this case. *Terrell*, supra, involved proof as to *other* crimes. Here, proof was directed toward elements of the *same* crime. We conclude that appellant's argument is without merit.

■ Appellant next asserts that the court erred in failing to submit the issue of the Statute of Limitations to the jury.

The Commonwealth had the burden to prove that the *discovery* of the alleged offenses took place after December 27, 1975 (since the Statute of Limitations required that action be brought within one year of the discovery of the offense. The charges were filed on December 27, 1976).

However, after a review of the testimony, we agree with the action of the lower court. The court refused to submit this issue to the jury since the Commonwealth's evidence, that the discovery of the crime came in January of 1976, was unrebutted. Thus, there was nothing for the jury to decide. Appellant does not contend in his brief that he produced any such evidence. Therefore we reject his contention.

Appellant next argues that the court erred when it instructed the jury that the Promissory Notes issued to investors, by appellant, were subject to registration under the Pennsylvania Securities Act (70 P.S. § 1–201 et seq.).

■ The jury had to decide whether appellant had knowledge of this requirement. The court as a matter of law, instructed the jury that the notes issued had to be registered. Appellant argues that the court should have elaborated on the number of exemptions contained in the Act to

help the jury intelligently decide whether appellant *knew* of the requirement (the apparent reasoning being that since there are so many complex exceptions to registration, the inclusion of the exemption would make it more difficult for the jury to infer knowledge of the requirement to register).

We believe, however, that the question as to whether the notes issued by the appellant were exempt from registration under the Act was a matter to be decided by the court. It was up to the appellant to introduce evidence to rebut the Commonwealth's evidence as to appellant's knowledge of the Act's registration requirement. It is obvious that appellant was attempting to remedy his failure to introduce such evidence, by confusing the jury as to the law on the requirement of registration. We therefore conclude that this assertion is without merit.

Appellant's fifth contention is that the court should have instructed the jury that the diversion of corporate funds to the construction of a residence, which was titled in the name of the corporation, was not diverting corporate assets for personal use.

This argument presumes that the instruction given by the court, stated that the diversion of corporate money toward the construction of a residence for appellant, constituted diversion of corporate assets for personal use. That is not the case.

The instruction of the court on this point clearly sets forth the fact that the residence was titled in the name of the corporation. The court properly submitted to the jury the issue of whether the *use* of the residence could be deemed to be "intentionally dealing with the property as his own."[1]

1. The charge of the court on this point was as follows:

"The third charge is directly in The Crimes Code. That is theft by failure to make the required disposition of funds received.

Now we are talking about money that is already in the Company. That gets down to the question of when he used corporate funds for personal reasons—to build a house titled in the corporate name and all the other uses to which you have heard—did he intend at that time to defraud the Company.

As such, we find no error and therefore dismiss this allegation.

■ Appellant next contends that §§ 1–201 and 1–102 of the Pennsylvania Securities Act, supra, are unconstitutionally overbroad.

Appellant was convicted of violating § 1–201 of the Securities Act, which provides:

> "It is unlawful for any person to offer to sell any security in this state unless the security is registered under this act . . ."

Appellant contends that the definition of "security" as used in the act[2] is unconstitutionally "overbroad" because it covers so many transactions that it does not afford notice to potential wrongdoers, since every possible type of loan is encompassed by the act, even those which present no danger of fraud.

> The Commonwealth maintains that he did by the very nature of the purposes, the home and so forth, even though he may have put it in the corporate name.
> The Defendant says he didn't because, as I understand his testimony, to some extent, he said a lot of this money was owed to him. He didn't take out his salary. Loans weren't repaid.
> In any event, as I recall, there was some testimony from which you might find that inference that this property was going in some manner to be used for various corporate functions.
> In any event, the issue for you is what was the Defendant's intention when he diverted these corporate funds". (N.T. 437, 438).

2. Security means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; share of beneficial interest in a business trust; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; pre-organization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security; . . . , or in general any interest or instrument commonly known as or having the incidence of a "security"; . . . All of the foregoing are securities whether or not evidenced by written document. "Security" does not include: (i) any beneficial interest in any voluntary inter vivos trust which is not created for the purpose of carrying on any business, or (ii) any beneficial interest in any testamentary trust, or (iii) any insurance or endowment policy or annuity contract under which an insurance company admitted in this state promises to pay a sum of money . . . , or (iv) any certificate issued under Section 809 of Insurance Company Law 1921 . . .

We need not decide this, however, because the Statute clearly defines security to include a "Note". Thus if certain parts of the definition *are* overbroad—the constitutionally permissible definitions may be severable from the infirm ones by § 1–703(b) of the Securities Act.[3] Thus we dismiss this contention.

■ Appellant's seventh contention is that five material elements of the crimes charged were not established beyond a reasonable doubt.

Upon a claim of insufficiency of evidence, we must review the evidence in the light most favorable to the Commonwealth. The Commonwealth is also entitled to all the reasonable inferences arising therefrom. See *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972).

We find no merit in any of the five insufficiency claims asserted by appellant. Our review of the testimony and the exhibits leaves us with no doubt that the Commonwealth more than satisfied its burden.

■ Appellant's final contention is that the Commonwealth failed to prove the commission of the crimes charged (theft by failure to make required disposition of funds received) on the dates set out in the informations.

The dates listed are the dates appellant received money from investors to be used for the purchase of inventory for the corporation. The exact date or dates when *this money* was misused was impossible to precisely determine for appellant had kept no records of financial dealings in the traditional accounting sense. The evidence left no doubt that the money received was misappropriated. It was a question for the jury to decide that on the date the money was received, appellant had accepted it with the intent to misuse it. They found that intent to be present, thus it was unnecessary to show the precise date the money was misused.

**3.** The Act provides:
(b) if any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provision or application, and to this end the provisions of this law are declared to be severable.

We conclude, therefore, that the failure to pinpoint the dates the investment monies were misappropriated, was not fatal to the Commonwealth's case.

Judgment of sentence affirmed.