860 P.2d 765

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mary RAMOS, Defendant–Appellant.**

No. 13734.

Court of Appeals of New Mexico.

July 27, 1993.

Certiorari Denied Sept. 3, 1993.

Sammy J. Quintana, Chief Public Defender Sumita Mukhoty and Douglas W. Baker, Asst. Appellate Defenders, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Mary Catherine McCulloch and Daniel F. Haft, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals her convictions of eight counts of fraudulent practices contrary to Section 58–13B–30 of the New Mexico Securities Act of 1986 (Securities Act). NMSA 1978, §§ 58–13B–1 to –56 (Repl.Pamp.1991). She contends that (1) the portions of the Securities Act she was convicted of violating are unconstitutionally vague and overbroad; (2) she was deprived of effective assistance of counsel; (3) her convictions are not supported by substantial evidence; and (4) the trial court erred in rejecting a proffered instruction, and that an instruction given by the trial court pursuant to SCRA 1986, 14–6008 was unconstitutional. We affirm.

*FACTS*

Defendant was the president of Ramos Homes & Land, Inc., a New Mexico corporation. During 1987, 1988, and 1989, while acting as an officer of the corporation, Defendant solicited funds from numerous individuals. On receipt of the funds, Defendant delivered, among other things, promissory notes that pledged prompt payment of the principal sums involved, together with high rates of interest. Although Defendant defaulted on the payment of several similar obligations, she continued to borrow money from other individuals without disclosing her true financial status or revealing that she had, in some instances, previously secured similar notes by executing mortgages on the same realty.

After receiving complaints from a number of individuals, the Securities Division of the State Regulation and Licensing Department concluded that Defendant was actively engaged in business as a mortgage broker and that she had failed to register as a broker under the Mortgage Loan Company and Loan Broker Act, NMSA 1978, Sections 58–21–1 to –27 (Repl.Pamp.1991).

In 1991 Defendant was charged under a criminal information with twenty counts of securities fraud, and one count of fraud contrary to NMSA 1978, Section 30–42–4 (Repl.Pamp.1989). The criminal information alleged, among other things, that Defendant withheld information concerning the true status of her financial condition and that she obtained money by fraud or device.

The State dismissed five of the charges in the information prior to trial. After a jury trial, Defendant was convicted on eight counts of securities fraud, acquitted

on seven counts, and the jury was unable to reach a verdict on an additional count.

## I. *Constitutionality of Securities Act*

■ Defendant contends that Section 58–13B–2(V) of the Securities Act violates both the state and United States Constitutions because of overbreadth, and that Sections 58–13B–2(V) and 58–13B–30 are unconstitutionally vague.[1] We separately examine each of these challenges. *See State v. Gattis*, 105 N.M. 194, 197, 730 P.2d 497, 500 (Ct.App.1986) (challenges of overbreadth and vagueness are distinct concepts). Although a statute may pass a vagueness test, it may, nevertheless, be held unconstitutional under an overbreadth challenge. *See Van Sant v. State*, 523 N.E.2d 229, 233 (Ind.Ct.App.1988).

Section 58–13B–30 provides:

In connection with the offer to sell, sale, offer to purchase or purchase of a security, a person shall not, directly or indirectly:

A. employ any device, scheme or artifice to defraud;

B. make an untrue statement of a material fact or fail to state a necessary material fact where such an omission would be misleading; or

C. engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

■ Under Section 58–13B–2(V), unless the context requires otherwise, the term "security" is defined to include, among other things, "a note." Defendant asserts that, as applied herein, Sections 58–13B–2(V) and 58–13B–30 are unconstitutionally overbroad because the definition of "security" is so sweeping in its application that the statutes impermissibly criminalize even innocent transactions involving the execution and delivery of promissory notes evidencing indebtedness. We find this argument unpersuasive.

In *Armstrong v. State*, 811 P.2d 593, 598–99 (Okla.Crim.App.1991), the Oklahoma Court of Criminal Appeals considered and rejected an argument similar to that advanced by Defendant in the present case. Armstrong challenged the Oklahoma Securities Act, arguing, among other things, that the definition of the term "security" was constitutionally over-broad because it proscribed legal as well as illegal conduct, without establishing clear perimeters or lines of demarcation. The court turned aside this argument, noting that the legislature intended that the act have broad application, and:

The legislature wrote the Act with all encompassing strokes to protect the public against blue-sky promotions and promoters, and other stock transactions not otherwise covered by law. *Nelson v. State*, 355 P.2d 413 (Okla.Cr.1960). The Act as written fulfills the legitimate governmental purpose of protecting the public from the many means promoters may use to separate the unwary from their money. The Securities Act is not unconstitutionally vague or overbroad.

*Id.*

Defendant further argues that the definition of "security" under Section 58–13B–2(V) lacks sufficient specificity and is so broad that it does not bear any logical link to the legislative objective of promoting the general welfare. We disagree. As observed by this Court in *State v. Dennis*, 80 N.M. 262, 264, 454 P.2d 276, 278 (Ct.App. 1969), "The Legislature is the proper branch of government to determine what behavior should be proscribed under the police power, and, thus, to define crimes...." A statute will be upheld as a proper exercise of the state's police power if the enactment is reasonably necessary to protect against wrongdoing or to preserve the public safety or general welfare. *Id.; see also, State ex rel. Stratton v. Sinks*, 106 N.M. 213, 218–19, 741 P.2d 435, 440–41 (Ct.App.1987). We thus conclude that Defendant has failed to demonstrate any vio-

---

1. The New Mexico Securities Act, although containing some variations, is patterned after the Uniform Securities Act (1985), approved by the National Conference of Commissioners on Uniform State Laws in 1985. 7B U.L.A., at 67 to 133 (Pocket Supp.1993).

lation of due process under either the United States Constitution or Article II, Section 18 of the New Mexico Constitution.

Other courts construing state securities legislation patterned after earlier versions of the Uniform Securities Act have also denied claims asserting that the legislation is void for overbreadth. *See Armstrong,* 811 P.2d at 598–99; *People v. Milne,* 690 P.2d 829, 835 (Colo.1984) (en banc); *State v. Taubman,* 78 Ohio App.3d 834, 606 N.E.2d 962, 968–69 (1992); *Commonwealth v. Hoffman,* 263 Pa.Super. 442, 398 A.2d 658, 662 (1979). *See generally Davis v. Securities & Exch. Comm'n,* 109 F.2d 6, 9 (7th Cir.) (upholding constitutionality of similar language in the federal securities act), *cert. denied,* 309 U.S. 687, 60 S.Ct. 889, 84 L.Ed. 1030 (1940). Defendant has not called our attention to any jurisdiction which has reached a different result in construing similar securities legislation. Thus, we deny Defendant's overbreadth challenge.

■ We turn next to Defendant's claim that Sections 58–13B–2(V) and 58–13B–30 are unconstitutionally vague. Specifically, Defendant asserts that her convictions for violating Section 58–13B–30 should be reversed because the latter section, when read in conjunction with Section 58–13B–2(V) defining "security," fails to provide fair and adequate warning to persons of ordinary intelligence that conduct of the type engaged in by her is criminally proscribed. She argues that this vice operated to deprive her of due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 18 of the New Mexico Constitution.

■ In order to satisfy the requirements of constitutional due process, a statute must provide fair and adequate warning to a person of ordinary intelligence of the conduct which is prohibited. *Gattis,* 105 N.M. at 197, 730 P.2d at 500; *State v. Casteneda,* 97 N.M. 670, 678, 642 P.2d 1129, 1137 (Ct.App.1982). The language of the statute must also describe the prohibited conduct with sufficient particularity so that it does not encourage arbitrary and discriminatory enforcement. *State v. Brecheisen,* 101 N.M. 38, 42, 677 P.2d 1074, 1078 (Ct.App.), *cert. denied,* 101 N.M. 11, 677 P.2d 624 (1984).

■ In reviewing a statute for constitutionality, a court presumes the statute is constitutional, *State v. Riddall,* 112 N.M. 78, 83, 811 P.2d 576, 581 (Ct.App.), *cert. denied,* 112 N.M. 21, 810 P.2d 1241 (1991), and the burden is upon the party attacking the constitutionality of an act to demonstrate its invalidity. *City of Farmington v. Fawcett,* 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct.App.), *cert. denied,* 114 N.M. 82, 835 P.2d 80, *and cert. quashed,* 114 N.M. 532, 843 P.2d 375 (1992).

Constitutional challenges alleging that a statute is vague are generally premised upon either a facial challenge or a claim that the statute is invalid in its application to the defendant under the facts of that particular case. *See State v. Archambeau,* 820 P.2d 920, 928 (Utah Ct.App.1991). Because Defendant has not detailed the precise basis for this claim, we examine this challenge to the constitutionality of Sections 58–13B–2(V) and 58–13B–30 under both tests.

■ In reviewing a facial challenge alleging that provisions of a law are unconstitutionally vague, the court must initially determine whether the law " 'is impermissibly vague in all its applications.' " *Archambeau,* 820 P.2d at 928 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982)). Where a defendant is shown to have engaged in conduct which is clearly proscribed, he or she will not be heard to complain of vagueness as it might be applied to the conduct of others. *Id.* We think Defendant has failed to meet her burden here to establish that the challenged legislation is facially vague as applied. Similarly, we conclude that Defendant has not shown that the statutes contested by her are unconstitutionally vague under either the United States Constitution or the New Mexico Constitution insofar as

they proscribe the conduct underlying each of her convictions.

When Section 58–13B–2(V) is read together with Section 58–13B–30, the statutes were sufficient to place Defendant and others on notice that each of the acts she was convicted of having violated involved fraudulent practices contrary to Section 58–13B–30 of the Securities Act. *State v. Pierce*, 110 N.M. 76, 81, 792 P.2d 408, 413 (1990) (to withstand constitutional challenge alleging vagueness, statute must give person of ordinary intelligence fair notice that conduct is forbidden). Moreover, the Securities Act explicitly details the types of transactions which are exempted. *See* § 58–13B–27. Defendant has not pointed to any evidence indicating that the notes given by her were exempt securities under Section 58–13B–26, or that the acts giving rise to each of her convictions were exempted transactions under Section 58–13B–27 of the Securities Act. Our conclusion is further buttressed by decisions of courts in other jurisdictions that have upheld similar state securities legislation against constitutional challenges based on allegations of vagueness. *State v. Tober*, 173 Ariz. 211, 213, 841 P.2d 206, 208 (1992) (en banc); *People v. Riley*, 708 P.2d 1359, 1363–64 (Colo.1985) (en banc); *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 811 P.2d 1220, 1236 (1991); *State v. Goetz*, 312 N.W.2d 1, 6 (N.D.1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1286, 71 L.Ed.2d 467 (1982); *Armstrong*, 811 P.2d at 598–99; *State v. Markham*, 40 Wash.App. 75, 697 P.2d 263, 267–69 (1985).

## II. *Claim of Ineffective Assistance of Counsel*

■ Defendant asserts that her trial counsel did not exercise the skill, judgment, and diligence of a reasonably competent defense attorney, and thus she was deprived of effective assistance of counsel at trial. Specifically, she argues that she had the financial resources to repay her creditors, that she had previously paid other counsel approximately $85,000 to defend her during a portion of the criminal proceedings pending against her, and that the attorney who represented her at trial failed to elicit this evidence. Defendant additionally argues that her trial counsel failed to present evidence indicating that she owned several buildings which were recently renovated, thus substantially adding to their value. She also contends that had this testimony been presented it would have refuted the State's theory that she was enmeshed in financial problems at the time she obtained money from the individuals alleged to have been victimized in this case.

The standard for evaluating a claim of ineffective assistance of counsel was reiterated by our Supreme Court in *State v. Gonzales*, 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992). In *Gonzales* the Court, citing from its seminal decision in *State v. Orona*, 97 N.M. 232, 233, 638 P.2d 1077, 1078 (1982), held that an accused is accorded effective assistance of counsel when the record indicates that defense counsel has exercised the skill, judgment and diligence of a reasonably competent defense attorney. *See also State v. Scott*, 113 N.M. 525, 531, 828 P.2d 958, 964 (Ct.App.1991), *cert. quashed*, 113 N.M. 524, 828 P.2d 957 (1992). The *Gonzales* Court also held: "Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice. *State v. Dean*, 105 N.M. 5, 8, 727 P.2d 944, 947 (Ct.App.), *cert. denied*, 104 N.M. 702, 726 P.2d 856 (1986)." *Gonzales*, 113 N.M. at 229–30, 824 P.2d at 1031–32; *see also State v. Brazeal*, 109 N.M. 752, 757–58, 790 P.2d 1033, 1038–39 (Ct.App.) (to establish prejudice, a defendant must show that there is a reasonable probability that, but for his attorney's errors, the result would have been different), *cert. denied*, 109 N.M. 631, 788 P.2d 931 (1990).

Defendant has failed to demonstrate that her trial counsel's performance fell below the required standard. *State v. Chamberlain*, 112 N.M. 723, 733, 819 P.2d 673, 683 (1991). The record reflects that Defendant was originally charged with twenty-one separate felony counts. Five charges were dismissed prior to trial, Defendant was ac-

quitted on seven counts, and the jury was unable to reach a verdict on an additional charge, resulting in a mistrial on that count. Moreover, Defendant concedes in her brief-in-chief that she testified at trial that she was financially unable to make restitution to her creditors. The record also indicates that her defense attorney presented the testimony of Boyd Stephens, who testified at trial that Defendant had made improvements to certain properties owned by her and as a result the properties had substantially increased in value. Additionally, Defendant's attorney elicited Defendant's own testimony denying that she had misrepresented any material facts when she had obtained money from the individuals claimed to have been victimized.

Our review of the record indicates that Defendant's trial attorney presented evidence designed to further a viable defense. In furtherance of such defense, her counsel elicited testimony that Defendant never intended to defraud or cheat any of the individuals from whom she solicited money, that she had never filed for bankruptcy because of her desire to repay all of the money obtained by her, and denying that she had misrepresented or omitted to disclose any material facts when she obtained money from the individuals claimed to have been defrauded. The fact that the jury did not accept this evidence does not establish that trial counsel failed to measure up to the required standard.

### III. *Sufficiency of Evidence*

■ We next examine Defendant's claim that her convictions of securities fraud are not supported by sufficient evidence. Specifically, she contends that the State failed to offer evidence establishing that Defendant misrepresented relevant information or omitted material facts to the individuals from whom she obtained money. Defendant argues these claims pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658, 712 P.2d 1, 4 (Ct.App.1985).

Our review of the evidence indicates the existence of substantial evidence supporting each of Defendant's convictions. *See State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (test to determine substantial evidence is whether on evidence presented a rational jury could find each element of offenses charged, beyond a reasonable doubt); *see also State v. Sutphin*, 107 N.M. 126, 130–31, 753 P.2d 1314, 1318–19 (1988). The record reflects that Defendant obtained funds from numerous individuals between May 1988 and March 1989. In exchange for monies obtained by her, which totalled in excess of $55,000, she executed and delivered a series of notes promising to repay each individual the principal sum, together with a high rate of interest thereon. The evidence also indicated that in some instances Defendant gave a mortgage to certain of the individuals from whom she obtained funds, without disclosing that she had executed and recorded other existing mortgages on the same realty.

The State presented evidence indicating that Defendant began experiencing financial troubles in 1987, and that she defaulted on several loans. Thereafter, the record indicates that she solicited loans or investments from individuals in 1988 and early 1989, giving notes thereon, without disclosing that she had previously defaulted on similar loans and investments. The number, nature, and frequency of these transactions indicates that the monies obtained by her were not isolated transactions and we find no evidence indicating that Defendant's acts were exempt transactions within the contemplation of Section 58–13B–27. *Cf. White v. Solomon*, 105 N.M. 366, 368, 732 P.2d 1389, 1391 (Ct.App.1986) (isolated transaction is one that is "unique," occurring alone or once, and is nonrecurrent), *cert. denied*, 105 N.M. 290, 731 P.2d 1334 (1987). Thus, the jury could reasonably find from this evidence that Defendant issued securities as defined in Section 58–13B–2(V), and that the failure of Defendant to disclose her true financial status was misleading to lenders or investors who were led to believe by Defendant's words and conduct that the notes would be repaid as represented by her.

### IV. *Propriety of Instruction*

■ Defendant's final point on appeal raises two issues concerning the instruc-

**130**

tions. First, she argues that an instruction given by the trial court pursuant to SCRA 14–6008, which relates to the duty of jurors to consult and to reach a unanimous verdict, was unconstitutional. Defendant contends the challenged instruction is unconstitutional because the jury was implicitly required to find Defendant guilty even if one or more of the jurors was not persuaded that Defendant was guilty. We do not agree that the instruction is infected with this vice. The challenged instruction followed verbatim SCRA 14–6008, as approved by our Supreme Court, and explicitly informed the jurors of their duty to consult with one another, but that they should not "surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of reaching a verdict." Moreover, Defendant has failed to demonstrate how she was prejudiced by the giving of this instruction. *Cf. State v. Ho'o*, 99 N.M. 140, 145, 654 P.2d 1040, 1045 (Ct.App.) (to establish error, the defendant must show prejudice), *cert. denied*, 99 N.M. 148, 655 P.2d 160 (1982).

Nor do we find that the trial court erred in rejecting an instruction proffered by Defendant. The instruction sought by Defendant was identical to SCRA 14–6008, except for the addition of a sentence stating that "[h]owever, if one or more of you are not persuaded beyond a reasonable doubt that the defendant is guilty of the offense charged then it is the duty of the jury as a whole to find the defendant not guilty." The language sought by Defendant would have the effect of precluding a mistrial in the event one or more jurors were unable to agree upon a unanimous verdict on a particular charge.

*CONCLUSION*

For the reasons discussed herein, we affirm Defendant's convictions.

IT IS SO ORDERED.

APODACA and BLACK, JJ., concur.