2007-NMCA-084

164 P.3d 81

**NEW MEXICO MINING ASSOCIATION,** New Mexico Home Builders Association, New Mexico Oil & Gas Association, New Mexico Cattle Growers' Association, New Mexico Wool Growers, Inc., Chino Mines Company, and Phelps Dodge Tyrone, Inc., Plaintiffs–Appellants,

v.

**WATER QUALITY CONTROL COMMISSION** (In the Matter of the Triennial Review of Standards for Interstate and Intrastate Surface Waters, 20.6.4 NMAC), Defendant–Appellee,

and

New Mexico Environment Department, Amigos Bravos, Gila Resources Information Project (Grip), New Mexico Trout, New Mexico Acequia Association, 1000 Friends of New Mexico, and Sierra Club, Intervenors–Appellees.

No. 25,814.

Court of Appeals of New Mexico.

May 10, 2007.

Gallagher & Kennedy, P.A., Dalva L. Moellenberg, Anthony (T.J.) J. Trujillo, Santa Fe, NM, for Appellants.

Office of the Attorney General, Gary K. King, Attorney General, Zachary A. Shandler, Assistant Attorney General, Santa Fe, NM, for Appellee.

New Mexico Environment Department, J. Brent Moore, Assistant General Counsel, Special Assistant Attorney General, Santa Fe, NM, for Intervenor–Appellee. New Mexico Environment Department.

Western Environmental Law Center, Matthew K. Bishop, Erik Schlenker–Goodrich, Taos, NM, for Intervenors–Appellees Amigos Bravos et al.

New Mexico Environmental Law Center, Sarah Piltch, Roderick Ventura, Douglas Meiklejohn, Santa Fe, NM, for Amicus Curiae Concerned Citizens for Clean Water.

## OPINION

ALARID, Judge.

{1} In this case we are asked to pass upon the validity of the 2005 amendment to the water quality standard defining "surface waters of the State." We hold that the amended definition of surface waters of the State was adopted consistent with the requirements of the Water Quality Act and with due process. We therefore affirm the decision of the Water Quality Control Commission adopting the 2005 standard.

## BACKGROUND

{2} In 1972, Congress enacted the Clean Water Act (CWA), 33 U.S.C. § 1251 (1972).

> The Act's stated objective is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." The Act also states that "[i]t is the policy of Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution[.]"

*Rapanos v. United States,* 547 U.S. 715, ——, 126 S.Ct. 2208, 2215, 165 L.Ed.2d 159 (2006) (plurality opinion) (citations omitted). To set apart waters subject to regulation by Congress pursuant to the Commerce Clause from other waters, Congress relied on the concept of "navigable waters," which is defined by the CWA as "the waters of the United States, including the territorial seas." *Id.* at 2215–16 (internal quotation marks and citation omitted).

{3} The CWA requires each state's pollution control agency to hold public hearings reviewing applicable water quality standards at least once every three years (the triennial review). 33 U.S.C. § 1313(c)(1) (2000). The New Mexico Water Quality Control Commission (WQCC) is the agency responsible for administering New Mexico's Water Quality Act (WQA), 1967 N.M. Laws ch. 190 [codified at NMSA 1978, ch. 74, art. 6], and is New Mexico's pollution control agency for purposes of the CWA. NMSA 1978, § 74-6-3(E) (2003). The WQCC's responsibilities include adopting water quality standards for surface and ground waters. NMSA 1978, § 74-6-4(C) (2003).

{4} Prior to the 1998 triennial review, the WQCC's Standards for Interstate and Intrastate Streams defined "water" as "all surface waters including waters situated wholly or partly within or bordering upon the State, whether public or private, except private waters that do not combine with other surface or subsurface water," and defined "water(s) of the State" as "all interstate and intrastate waters including, natural ponds and lakes, playa lakes, reservoirs, perennial streams and their tributaries, intermittent streams, sloughs, prairie potholes and wetlands." 6 N.M. Reg. at 57 (Jan. 14, 1995). In February 2000, during the 1998 triennial review of the Standards for Interstate and Intrastate Streams, the WQCC adopted the following definition:

> "Surface water(s) of the State" means all *interstate* waters including *interstate* wetlands, and all *intrastate* waters, such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, reservoirs or natural ponds and all tributaries of such waters *the use, degradation, or destruction of which would affect interstate or foreign commerce.* Surface waters of the State also means any manmade bodies of water which were originally created in surface waters of the State or resulted in the impoundment of surface waters of the State.

11 N.M. Reg. at 107 (Feb. 14, 2000) (emphasis added). The WQCC noted "the potentially restrictive nature of this definition based on the vagaries of current federal jurisprudence" and stated that it "may revisit this definition in the future if the federal courts apply too strict an interstate commerce test in the future." The WQCC's concern with

the "vagaries of current federal jurisprudence" proved to be justified.

{5} At the federal level, the CWA is enforced by the Administrator of the Environmental Protection Agency (EPA), and the Secretary of the Army, acting through the Chief of the Corps of Engineers (Corps). The Corps initially relied on a definition of "navigable waters" dating back to the nineteenth century: i.e., "interstate waters that are 'navigable in fact' or readily susceptible of being rendered so." *Rapanos*, 126 S.Ct. at 2216. This construction was criticized as too narrow by the EPA, federal courts, and members of Congress. *Id.; Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'gs*, 531 U.S. 159, 183–84, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) [hereinafter *SWANCC*] (Stevens, J., dissenting). Thereafter, the Corps adopted successive definitions that "deliberately sought to extend the definition of 'the waters of the United States' to the outer limits of Congress's commerce power." *Rapanos*, 126 S.Ct. at 2216. By 1975, the Corps had adopted regulations extending the CWA to "nonnavigable intrastate waters whose use or misuse could affect interstate commerce." *SWANCC*, 531 U.S. at 184, 121 S.Ct. 675 (Stevens, J., dissenting) (internal quotation marks and citation omitted). In *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 135, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985), the Supreme Court upheld the Corps exercise of CWA jurisdiction over certain nonnavigable wetlands that abutted on traditional navigable waterways. Following *Riverside Bayview*, the Corps adopted increasingly broad interpretations of waters of the United States. *SWANCC*, 531 U.S. at 184, 121 S.Ct. 675 (Stevens, J., dissenting).

{6} By 2000, when the WQCC incorporated an affect-on-interstate-commerce test into the definition of surface waters of the State, federal authority to regulate water pollution under the Commerce Clause was understood to extend to "discharges made into every creek, stream, river or body of water that in any way may affect interstate commerce." *United States v. Earth Sciences, Inc.*, 599 F.2d 368, 375 (10th Cir.1979). Of particular importance for western states such as New Mexico, CWA protection had been upheld when extended to clearly nonnavigable surface features such as an arroyo in which water flows and provides a surface connection to navigable waters only during times of heavy rain. *Quivira Mining Co. v. United States Envtl. Prot. Agency*, 765 F.2d 126, 129–30 (10th Cir.1985). Using the cumulative impact doctrine of *Wickard v. Filburn*, 317 U.S. 111, 128–29, 63 S.Ct. 82, 87 L.Ed. 122 (1942), CWA protection had been extended to isolated, intrastate wetlands based on evidence that the destruction of the wetland habitat of migratory birds in the aggregate substantially affects interstate commerce. *See Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs*, 191 F.3d 845, 849–50 (7th Cir.1999), *rev'd on other grounds*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001).

{7} In *SWANCC*, a sharply divided Supreme Court rejected the Corps exercise of jurisdiction over "an abandoned sand and gravel pit in northern Illinois which provides habitat for migratory birds." 531 U.S. at 162, 121 S.Ct. 675. The five-justice majority held that " 'nonnavigable, isolated, intrastate waters,'—which, unlike the wetlands at issue in *Riverside Bayview*, did not 'actually abu[t] on a navigable waterway,'—were not included as 'waters of the United States.' " *Rapanos*, 126 S.Ct. at 2217 (characterizing and quoting *SWANCC*, 531 U.S. at 167, 171, 121 S.Ct. 675). *SWANCC* resulted in considerable uncertainty about the scope of federal regulatory jurisdiction under the CWA. *See generally Advance Notice of Proposed Rulemaking on the Clean Water Act Regulatory Definition of "Waters of the United States,"* 68 Fed.Reg.1991 (Jan. 15, 2003); *United States v. Rapanos*, 376 F.3d 629, 638 (6th Cir.2004) (discussing post-*SWANCC* split of authority), *vacated and remanded*, 547 U.S. 715, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006).

{8} In the course of the first triennial review following *SWANCC*, Appellee the New Mexico Environment Department (NMED), petitioned the WQCC to amend various standards, including the standard defining surface waters of the State. The NMED proposed that the definition of surface waters of the State be amended to read:

"**surface water(s) of the state**" means all surface waters situated wholly or partly within or bordering upon the state, including lakes, rivers, streams (including intermittent and ephemeral streams), mudflats, sandflats, wetlands, sloughs, prairie potholes, wet meadows, playa lakes, reservoirs or natural ponds. Surface waters of the state also means all tributaries of such waters, including adjacent wetlands, any manmade bodies of water that were originally created in surface waters of the state or resulted in the impoundment of surface waters of the state, and any "waters of the United States" as defined under the Clean Water Act that are not included in the preceding description. Surface waters of the state does not include private waters that do not combine with other surface or subsurface water or any water[.]

(Redlining and strikeouts omitted). The NMED asserted that by eliminating language referring to interstate commerce, the proposed regulation would "recognize that the state has plenary power within its borders and is not constrained by interstate commerce considerations." (Emphasis omitted). The NMED explained that "[t]he proposal is not an expansion. It is intended to ensure the same level of protection that existed before *SWANCC*."

{9} The WQCC designated a hearing officer to conduct a public hearing and to make a report on proposed amendments to the water quality standards. The WQCC published a public notice of the hearing on the NMED's petition. Four parties, including Appellant Phelps Dodge Corporation (Phelps Dodge) and the NMED submitted written technical testimony. Three parties, including Phelps Dodge and the NMED submitted written rebuttal testimony. The hearing officer conducted an eight-day public hearing in February and March 2004 during which interested persons were provided with a reasonable opportunity to be heard. Witnesses testifying in support and in opposition to the proposed amendments were subject to cross-examination. Following the hearing, the hearing officer prepared a detailed report summarizing the evidence, examining the arguments for and against the amendments, and making recommendations with respect to each pro-

posed amendment. The parties were provided with the opportunity to submit written comments on the hearing officer's report.

{10} The WQCC deliberated on the evidence, public comments, the hearing officer's report and attachments, and the parties' comments on the report over the course of five days. On May 13, 2005, the WQCC issued its Statement of Reasons for Amendment of Standards. The Statement of Reasons included the WQCC's decision to adopt the NMED's proposed amendment to the standard defining surface waters of the State. The WQCC provided the following rationale for its decision to adopt the NMED's proposed amendment:

100. The Commission adopts NMED's proposal to amend the definition [of surface waters of the State] to reflect New Mexico's plenary power over waters within its borders because the WQCC's authority . . . is not constrained by the Commerce Clause of the United States Constitution.

101. The interests of the state are critically linked both economically and culturally to good water quality in all of the state's waters, not just waters that can be linked to interstate commerce. Non-perennial waters make up over 80% of this state's waters, and should be expressly protected in the standards. Extending the WQS [Water Quality Standards] to intrastate waters is consistent with applicable federal case law. The U.S. Supreme Court supports the goal of protecting isolated intrastate waters—waters with no relation to interstate commerce—at the state level, rather than federal level. The SWANCC decision, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001), did not strip state jurisdiction; it just limited federal jurisdiction.

The WQCC filed the amended standards with the State Records Center. The WQCC published the amended standards in the New Mexico Register. 16 N.M. Reg. at 393–429 (May 13, 2005). The standards became effective on May 23, 2005.

{11} Appellants, New Mexico Mining Association, New Mexico Home Builders Association, New Mexico Oil & Gas Association,

New Mexico Wool Growers, Inc., Chino Mines Company, and Phelps Dodge assert that they are "entities that have been adversely affected or represent persons that have been adversely affected" by the WQCC's adoption of the 2005 definition of surface waters of the State because they and their members "own and operate facilities and properties ... where [there] exist various types of ponds, lagoons, ditches, channels, impoundments, and other areas where water sometimes accumulates or flows on the surface of the earth." Appellants filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

■ {12} Proceedings adopting water quality standards are subject to judicial review. *Bokum Res. Corp. v. N.M. Water Quality Control Comm'n,* 93 N.M. 546, 553, 603 P.2d 285, 292 (1979) (holding that proceedings adopting water quality standards are subject to the same judicial review as agency "rules"). We may set aside a decision of the WQCC adopting a water quality standard if the WQCC's action "is found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with law." NMSA 1978, § 74–6–7(B) (1993).

### The WQCC Complied with Statutory Standards

{13} Appellants argue that the WQCC's decision to adopt the 2005 "definition for 'surface waters of the State' was not supported by substantial evidence in the record because the revision was based on a legal position instead of the relevant factors and evidence set forth in Sections 74–6–4(C) and (D)." We reject this claim of error for the reasons set out later in this opinion.

{14} As an initial matter, we hold that Section 74–6–4(D) is inapplicable to water quality standards. Section 74–6–4(D) applies to "regulations to prevent or abate water pollution." Water quality standards and water quality regulations are distinct concepts: "a standard defines the amount of contaminant in the ambient water and ... a regulation defines the conduct necessary for an

entity that discharges pollutants to comply with the standard." *Regents of the Univ. of Cal. v. N.M. Water Quality Control Comm'n,* 2004–NMCA–073, ¶ 25, 136 N.M. 45, 94 P.3d 788. Section 74–6–4(D) does not apply to water quality standards.

■ {15} We now turn to Section 74–6–4(C). The applicability of Section 74–6–4(C) is not in dispute. Section 74–6–4(C) provides that the WQCC

shall adopt water quality standards for surface and ground waters of the state based on credible scientific data and other evidence appropriate under the [WQA]. The standards shall include narrative standards and as appropriate, the designated uses of the waters and the water quality criteria necessary to protect such uses. The standards shall at a minimum protect the public health or welfare, enhance the quality of water and serve the purposes of the [WQA]. In making standards, the commission shall give weight it deems appropriate to all facts and circumstances, including the use and value of the water for water supplies, propagation of fish and wildlife, recreational purposes and agricultural, industrial and other purposes[.]

Appellants argue that the 2005 definition is invalid because it was not supported by substantial "credible scientific evidence" as required by Section 74–6–4(C).

{16} Many provisions of the water quality standards reflect primarily scientific judgments that necessarily are informed by "credible scientific evidence." *E.g.,* 20.6.4.7.G NMAC (2006) (defining bioaccumulations factor). In contrast, the WQCC's decision to eliminate references to interstate commerce in the definition of surface waters of the State and to exercise subject matter jurisdiction to the full extent authorized by the Legislature is primarily a nonscientific, political and legal judgment about the respective roles of state and federal government in protecting the waters of New Mexico. The WQCC's decision to decouple the definition of surface waters of the State from the "vagaries of current federal jurisprudence" was not a scientific judgment that necessarily depends primarily upon "credible

scientific evidence." Accordingly, the WQCC was empowered to give controlling weight to other evidence appropriate under the WQA in making what was largely a political and legal judgment. Other appropriate evidence included evidence of the uncertain state of federal law following *SWANCC*. We hold that the reasons for amending the definition of surface waters of the State given by the WQCC in its Statement of Reasons were supported by substantial evidence in the record.

■ {17} Appellants also argue that the 2005 definition of surface waters of the State is invalid because the WQCC did not receive evidence of the use and value of those waters that were not covered by the old definition but that now fall within the 2005 definition of surface waters of the State. According to Appellants, to the extent the 2005 definition expands the definition of surface waters of the State so as to encompass additional surface waters not covered by the 1998 definition, the WQCC has indirectly expanded the scope of the water quality standards without scientifically validating the application of the uses and criteria contained in the standards proper to newly covered waters as required by Section 74–6–4(C). As we understand this argument, it necessarily has the following components: (1) there exist within the borders of New Mexico surface waters the use, degradation, or destruction of which would not affect interstate or foreign commerce; (2) these purely intrastate surface waters were not covered by the 1998 definition of surface waters of the State which reached only those intrastate waters the use, degradation, or destruction of which would affect interstate commerce; (3) these surface waters are now covered by the 2005 definition due to the elimination in the 2005 definition of the former requirement of an affect on interstate or foreign commerce; (4) these newly covered surface waters may have materially different characteristics from the surface waters the WQCC contemplated when it validated existing water quality standards; and (5) these materially different characteristics may make it scientifically questionable to apply existing water quality standards to these newly covered waters.

{18} We reject this claim of error on the ground that Appellants have established no more than a theoretical possibility that the 2005 definition of surface waters will result in the improper application of water quality standards to newly covered waters. We refer to a "theoretical possibility" for several reasons. First, to the extent the 1998 definition piggybacked WQCC jurisdiction on pre-*SWANCC* federal regulatory jurisdiction under the CWA, it would have reached "virtually all bodies of water," *International Paper Co. v. Ouellette*, 479 U.S. 481, 492, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), and "virtually any land feature over which rainwater or drainage passes and leaves a visible mark." *Rapanos*, 126 S.Ct. at 2217. Thus, it is not at all clear to what extent the 2005 definition captures additional surface waters beyond those already captured by the 1998 definition. Second, if we assume that "surface waters of the state" include certain intrastate waters that did not fall within the sweeping scope of waters subject to federal regulation under the CWA, we have no information about these newly covered waters. Appellants did not provide the WQCC, and have not provided us, with actual examples of such waters. Appellants have not identified a single existing surface water, such as a stream or pond, described the water's characteristics, and explained why, in view of those characteristics, the water would not have been covered under the 1998 definition, but is now covered as a result of the elimination of references to interstate commerce in the 2005 definition. Moreover, because Appellants have not identified any newly covered waters, they also have failed to identify the characteristics of these newly covered waters that make it scientifically questionable to apply existing water quality standards to such waters.

■ {19} "A party challenging a rule adopted by an administrative agency has the burden of establishing the invalidity of the rule." *N.M. Mining Ass'n v. N.M. Mining Comm'n*, 1996–NMCA–098, ¶ 8, 122 N.M. 332, 924 P.2d 741. Appellants did not come forward with any evidence supporting their argument. Appellants' speculation about hypothetical newly covered waters does not

meet their burden of demonstrating the invalidity of the WQCC standards.

{20} We do not mean to suggest that the decoupling of state law and federal law accomplished by the 2005 revision was a meaningless gesture. A plurality of the United States Supreme Court is prepared to limit the jurisdiction under the CWA to "relatively *permanent* bodies of waters," *Rapanos,* 126 S.Ct. at 2222, an interpretation that if adopted by a majority of the Court would eliminate federal jurisdiction over ephemeral waters, *id.,* which make up over 80% of New Mexico's waters according to the finding made by the WQCC. Justice Kennedy, who concurred in the judgment, would require covered waters to have a " 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Rapanos,* 126 S.Ct. at 2236 (Kennedy, J., concurring) (quoting *SWANCC,* 531 U.S. at 167, 172, 121 S.Ct. 675). Either of these approaches could significantly limit the scope of federal jurisdiction under the CWA, particularly in an arid state such as New Mexico. By decoupling the WQCC's jurisdiction from federal law, the 2005 amendment insures that any future contraction of federal CWA jurisdiction will not affect the WQCC's subject matter jurisdiction.

**Overbreadth and Vagueness**

{21} Appellants argue that the 2005 definition is "not in accordance with the law because the revised definition is unconstitutionally overbroad and/or vague."

{22} We begin our analysis by noting that overbreadth and vagueness are related, but analytically distinct concepts. Laurence H. Tribe, *American Constitutional Law* 1033 (2d ed.1988).

{23} The United States Supreme Court has permitted overbreadth challenges in "relatively few settings," *Sabri v. United States,* 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), generally settings where government regulation restricts the exercise of First Amendment or other fundamental rights, *see id.* at 610, 124 S.Ct. 1941 (collecting cases). This Court has limited overbreadth challenges to laws that affect First Amendment rights. *In re Candice Y.,* 2000–NMCA–035, ¶ 18, 128 N.M. 813, 999 P.2d 1045. Appellants have not cited a single case permitting an overbreadth challenge to an environmental law affecting the purely economic interests of property owners. We decline to extend the overbreadth doctrine to the present context, and accordingly reject Appellants' overbreadth challenge.

{24} A vagueness challenge is premised on the due process requirement of reasonable notice. *Bokum Res. Corp.,* 93 N.M. at 549, 603 P.2d at 288. A law "must provide fair and adequate warning to a person of ordinary intelligence of the conduct which is prohibited." *State v. Ramos,* 116 N.M. 123, 127, 860 P.2d 765, 769 (Ct.App. 1993).

{25} The Legislature has defined "water," the subject matter of the WQA, using a straightforward, purely geographical test: water for purposes of the WQA must be "situated wholly or partly within or bordering upon [New Mexico]." The WQA applies to *all* water, surface or subsurface, that meets this geographical test, with the exception of "private waters that do not combine with other surface or subsurface water." Within the broad statutory definition of water, the WQCC's definition of surface waters of the State serves the limited function of broadly distinguishing between *surface* waters of the State and *subsurface* waters of the State. This distinction is reflected in separate standards for surface waters and ground waters, *compare* 20.6.2.3000 through .3014 NMAC (2006), *with* 20.6.4 NMAC (2006), which are administered by separate bureaus within the New Mexico Environment Department, Organization Chart (updated Feb. 5, 2007), available online at www.nmenv. state.nm.us/NMED/Org_Chart.pdf.

{26} An agency drafting regulations is not required to write for the benefit of a deliberately unsympathetic or wilfully obtuse audience: for purposes of due process, a governmental agency attempting to give notice may assume "a hypothetical recipient desirous of actually being informed." *Cf. Cordova v. Taxation & Revenue Div.,* 2005–NMCA–009, ¶ 30, 136 N.M. 713, 104 P.3d

1104 (emphasis omitted) (discussing procedural due process requirements as to method of giving notice). We are satisfied that the 2005 definition of surface waters of the State provides persons of reasonable intelligence with constitutionally adequate notice of what waters are subject to regulation as surface waters of New Mexico. Indeed, the geographical test imposed by the 2005 definition seems to us to be much simpler and clearer than a test requiring consideration of whether the use, degradation, or destruction of a surface water would affect interstate or foreign commerce.

■■■■ {27} We acknowledge that there will be situations in which determining whether conduct is affecting a surface water of the State will present a fact-sensitive question. This point was made during the proceedings below by opponents of the proposed new definition who raised questions about the application of the definition to golf course water hazards, mining pits, livestock-watering impoundments and certain other surface water features. Most obviously, the exception for "private waters that do not combine with other surface or subsurface water" can easily present fact-sensitive questions. The possibility of hypothetical close cases is not dispositive in the context of a facial vagueness challenge. "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)). Where, as here, a law is subjected to a pre-enforcement vagueness challenge, the opponent of the law must demonstrate that the law is drafted so as to be "impermissibly vague in all its applications." *Ramos*, 116 N.M. at 127, 860 P.2d at 769 (internal quotation marks and citation omitted). *But cf. Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir.2003) (noting disagreement among the members of the United States Supreme Court as to the standard governing a facial vagueness challenge outside the context of the First Amendment). There is no question that the basic geographic test captures large numbers of surface waters such as lakes, streams, and reservoirs located within the borders of New Mexico as to which the definition indisputably applies. Because the 2005 definition clearly is not impermissibly vague in all its applications, we must reject Appellants' facial vagueness challenge.

## The WQCC Did Not Act Arbitrarily and Capriciously

■■■ {28} Appellants argue that the WQCC acted arbitrarily and capriciously in adopting the 2005 definition "because it disregarded and failed to give due consideration to ... comments and testimony ... that the revised definition was unclear and overbroad." Appellants point to testimony by three witnesses who testified that potential expansion of state regulatory jurisdiction under the new definition was a concern within the livestock, agricultural, and mining industries. Appellants also note that the NMED witnesses testifying in support of the new definition favored a site-specific approach and were hesitant in applying the definition to hypothetical examples such as a residential landscaping pond, a golf course water hazard, a mining pit carved out of the former site of arroyos and channels, and standing water atop a tailing impoundment without additional information about the characteristics of the sites.

■■■ {29} Our review of the record satisfies us that the WQCC carefully considered the evidence and comments submitted by parties opposing the proposed amendment to the definition of surface waters. The fact that there was evidence supporting an opposing result does not mean that the WQCC acted arbitrarily and capriciously: "[e]ven if a different conclusion might have been reached from the facts, the choice made 'is not arbitrary or capricious if exercised honestly and upon due consideration.'" *Regents of the Univ. of Cal.*, 2004–NMCA–073, ¶ 35, 136 N.M. 45, 94 P.3d 788 (citation omitted). Frequently, administrative rules must balance the requirements of clarity and specificity against "inflexibility and unworkable restriction." *N.M. Mun. League, Inc. v. N.M.*

*Envtl. Improvement Bd.,* 88 N.M. 201, 209, 539 P.2d 221, 229 (Ct.App.1975). We are satisfied that the WQCC's decision to eliminate the affects-on-interstate-commerce requirement resulted in an overall gain in clarity and ease of application, notwithstanding the possibility that the 2005 definition may prove difficult to apply in some cases.

{30} To the extent Appellants challenge the breadth of the 2005 definition, their disagreement actually is with the Legislature, not the WQCC. Consistent with the statutory definition of water, the WQCC's 2005 definition of surface waters of the State extends the definition of surface waters to the limits of the State's territorial jurisdiction, applying a straightforward geographical test that corresponds to the test enacted by the Legislature: is the (surface) water in question situated wholly or partly within or bordering upon the State? The Legislature chose to extend the subject matter jurisdiction of the WQCC to the limits of New Mexico's territorial jurisdiction over surface and ground water, and the Legislature is the law-making body to which Appellants' arguments should be addressed. The WQCC was not required, indeed was not permitted, to re-examine the Legislature's decision to regulate all water located within the borders of New Mexico (with the exception of purely private waters). The WQCC did not act arbitrarily or capriciously in adopting a definition of surface waters of the State that merely acknowledges the extent of the subject matter jurisdiction authorized by the Legislature. To the contrary, the WQCC would have acted in derogation of its responsibilities under the WQA had it failed to adopt a definition of surface waters of the State that allows it to protect surface waters of the State to the full extent contemplated by the Legislature. *See Natural Res. Def. Council, Inc. v. Callaway,* 392 F.Supp. 685, 686 (D.C.1975) (holding that defendant agency and administrators were without authority to adopt a regulation, the effect of which was to "amend or change" a definition adopted by Congress as part of the CWA).

## CONCLUSION

{31} We affirm the decision of the WQCC adopting the 2005 standard.

{32} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.