2000-NMCA-035

999 P.2d 1045

**STATE of New Mexico ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

**In the Matter of: Candice Y., a child,**

**And Concerning: Patricia N. and Nolando N.**

**No. 19,718.**

Court of Appeals of New Mexico.

Feb. 23, 2000.

Certiorari Denied, No. 26,247, April 12, 2000.

Angela L. Adams, Chief Children's Court Attorney, Roy E. Stephenson, Children's Court Attorney, Children, Youth & Families Dep't, Santa Fe, for Appellee.

William G. Stripp, Gallup, for Appellants.

Mary Helen Baber, Gallup, Guardian Ad Litem.

## OPINION

SUTIN, Judge.

{1} This appeal from an adjudicatory judgment under the Abuse and Neglect Act (the Act) presents a constitutional attack against a provision of the Act, requires us to consider the applicability of the Act to stepparents, and tests certain evidentiary privileges.

{2} The Children, Youth and Families Department of the State of New Mexico (CYFD) filed a Neglect Abuse Petition under the Act to protect Candice from abuse by her stepfather, Nolando, and from neglect by her mother, Patricia. The proceeding culminated in a determination of "neglect or abuse" within the meaning of the Act, placement of Candice in the legal custody of CYFD, and the adoption of a treatment plan. Patricia and Nolando (together, Appellants) appeal, contending (1) the evidence was insufficient to support the judgment, (2) the Act is unconstitutionally vague and overbroad, (3) the court erred in not allowing witnesses to testify, (4) the judge should have recused himself, (5) the court lacked subject matter jurisdiction over Nolando, (6) the court erred in not removing the guardian ad litem, (7) the court erroneously admitted into evidence an inaudible tape, (8) the court erred by admitting privileged counseling session records relating to Patricia, (9) the court erred by admitting a privileged treatment plan, and (10) the court failed to exclude the district attorney from hearings. We affirm.

## FACTS

{3} Nolando had been living with Patricia and Candice for several years when Candice was admitted to the hospital for attempted suicide at the age of twelve. Candice disclosed that Nolando had touched her breasts and vaginal area on several occasions. Nolando admitted to inappropriately touching Candice. Candice had previously told Patricia of the touching. After Candice's first disclosure to Patricia, Patricia confronted Nolando, who agreed to stop the touching. However, Nolando continued to engage in sexual touching.

{4} Later, the family changed its story. Patricia denied that she knew that the abuse was still going on. The child recanted and stated that her suicide attempt was related to other causes. Nolando denied that there was anything sexual about the touching. Because the parents were no longer acknowledging the risk to the child and CYFD's work with the family was not successful, CYFD filed the Neglect Abuse Petition. Criminal charges were pending against Nolando.

{5} The children's court appointed counsel to represent Nolando and Patricia. The court also appointed a guardian ad litem to represent the interests of Candice. Following an adjudicatory hearing that stretched on and off over six days, the children's court found that Nolando had touched the child's breasts and vagina and that Patricia knew of the touching but was unable to adequately protect the child. Accordingly, the children's court concluded that the child was neglected or abused, as defined in the Act. Additional pertinent facts are set out in our discussion of the issues.

## DISCUSSION

### I. Sufficient Evidence Exists to Support Abuse and Neglect

{6} Appellants contend that the children's court should have granted a directed verdict because Candice testified that she made up the allegations of sexual abuse and Nolando testified that the touching was not sexual in nature. We consider these arguments to be an attack on the sufficiency of the evidence of abuse and neglect to support

the judgment. Further, Appellants also contend that CYFD did not prove by clear and convincing evidence that Nolando abused and Patricia neglected Candice.

{7} In our view, the evidence solidly supports the court's determinations. Candice attempted suicide. She told the doctor that she did not feel safe at home. She told Patricia that Nolando had touched her in a sexual manner. She told an investigator her attempted suicide was because Nolando was molesting her. She made specific references to him rubbing her breasts and vagina. A videotape of the child's initial statements concerning sexual abuse was admitted into evidence without objection. The tape contains repeated statements by Candice of Nolando's touching her breasts and vaginal area when Candice was in bed. These touchings occurred sometimes when Nolando's purported purpose was to get Candice up and out of bed in the morning, and sometimes at night either when Candice was asleep (she would be awakened by the touching) or while Candice pretended to be asleep (she was afraid to go to sleep for fear that she would be molested during sleep).

{8} Further, Nolando admitted to the investigator for the District Attorney that he had touched the child's breasts and vaginal area under her clothing. Patricia told the investigator and a CYFD social worker that she had been told by Candice about the touching, had tried to stop it, and that it recurred. Both Nolando and Patricia made essentially the same admissions to the social worker.

{9} At trial, Candice testified that she could not remember what she said to the doctor. She expressed her distress at what was happening to her family since her suicide attempt and stated that she made up the touchings so that her stepfather would get marriage counseling. Candice later provided another explanation for her attempted suicide, stating that she had attempted suicide as part of her experimentation with drugs. Candice's pretrial statements and trial testimony conflict. But Appellants' initial statements corroborate Candice's earlier statements of sexual abuse and parental neglect.

{10} Appellants nevertheless focus on Candice's testimony that she made up the allegations of sexual abuse, Nolando's testimony that the touching was not sexual in nature and that he received no sexual gratification from the touching, and Patricia's testimony that once she was informed of the alleged wrongful touching she tried to witness such touching and never saw it occur. Appellants contend that Patricia did all she was required to do under the Act. Appellants argue that under these circumstances the children's court erred in determining that sexual abuse and neglect occurred. We are unpersuaded. When we review a substantial evidence claim, "[t]he question is not whether substantial evidence would have supported an opposite result; it is whether [the] evidence supports the result reached." *Hernandez, v. Mead Foods, Inc.,* 104 N.M. 67, 71, 716 P.2d 645, 649 (Ct.App.1986). "This Court will uphold the termination if, viewing the evidence in the light most favorable to the judgment, a fact finder could properly determine that the clear and convincing standard was met." *State ex rel. Children, Youth & Families Dep't v. Tammy S.,* 1999–NMCA–009, ¶ 13, 126 N.M. 664, 974 P.2d 158. From the evidence in this case, the children's court could reasonably determine that sexual abuse and neglect occurred despite Candice's recantation and Nolando's later attempt to deny sexual motive. The evidence of abuse and neglect is ample to support the court's findings under the clear and convincing standard of proof.

{11} Appellants criticize the children's court for not ordering a predisposition report under NMSA 1978, § 32A–4–21 (1997) to obtain certain information regarding the child. Appellants argue that the court did not order the predisposition study because it had "made up its mind" without considering the required factors of the child's educational background, cultural background, and wishes. With no indication that this issue was preserved below, with no record showing whether a disposition report was ordered or not, and because this issue was raised for the first time in Appellants' reply brief, we decline to address this issue.

## II. The Act is Not Unconstitutionally Vague or Overbroad

{12} Appellants attack NMSA 1978, § 32A–4–2(E) (1997) of the Act as unconstitutionally vague and overbroad. Under this section, " 'sexual abuse' includes, but is not limited to, criminal sexual contact, incest or criminal sexual penetration, as those acts are defined by state law." Appellants focus on the words "but not limited to."

{13} We hold that Section 32A–4–2(E) is not unconstitutional as applied, because Nolando's conduct fits into clearly proscribed conduct. Because the statute is constitutional as applied in this case, we hold that Appellants cannot attack this Section as facially invalid. Finally, we hold that Appellants' overbreadth challenge cannot succeed because no First Amendment speech or association right is involved.

### A. The Act is Constitutional as Applied

{14} Nolando claims that Section 32A–4–2(E) is unconstitutionally vague as applied to him. *See State v. Andrews,* 1997–NMCA–017, ¶ 11, 123 N.M. 95, 934 P.2d 289. Nolando's conduct fits squarely within specifically prohibited conduct, namely criminal sexual contact of a minor. *Compare* Section 32A–4–2(E) (" 'sexual abuse' includes, but is not limited to, criminal sexual contact, incest or criminal sexual penetration, as those acts are defined by state law") *with* NMSA 1978, § 30–9–13 (1991) (defining criminal sexual contact of a minor as "the unlawful and intentional touching ... the intimate parts of a minor," and defining "intimate parts" to mean the "primary genital area, groin, buttocks, anus or breast."). This criminal statute has been upheld against attack that it is unconstitutionally vague and overbroad. *See State v. Pierce,* 110 N.M. 76, 80–83, 792 P.2d 408, 412–13 (1990). Appellants do not contend that Section 30–9–13 is unconstitutionally vague or overbroad. The court quite reasonably concluded that Nolando's conduct, touching Candice's breasts and vaginal area, constituted criminal sexual contact of a minor. Certainly a person of ordinary intelligence would be on notice that such conduct was forbidden under Section 30–9–13 and constituted sexual abuse under Section 32A–

4–2(E). *Cf. State v. Larson,* 94 N.M. 795, 796, 617 P.2d 1310, 1311 (1980) ("We do not in any way believe that a person of ordinary intelligence would not understand which type of conduct is proscribed in Section 30–9–11 [criminal sexual penetration]."). Because Nolando's conduct was clearly proscribed, the statute was not vague as applied to Nolando.

**B.** *Appellants Cannot Attack the Act for Facial Vagueness*

{15} For his attempted facial attack, Nolando claims the wording "includes, but is not limited to" in Section 32A–4–2(E) is unconstitutionally vague. In order to attack the statute facially as unconstitutionally vague, Nolando must show that the statute is void in all its applications; or, stated another way, if Nolando's own conduct is clearly proscribed under the statute, he cannot assert that the statute is unconstitutionally vague "as it might be applied to the conduct of others." *State v. Ramos,* 116 N.M. 123, 127, 860 P.2d 765, 769 (Ct.App.1993); *see also Pierce,* 110 N.M. at 80, 792 P.2d at 412 ("[T]he constitutionality of a statute is generally subject to challenge only by a person who demonstrates the unconstitutional application of the statute to him.").

{16} Nolando claims that *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), authorizes his facial attack even if Section 32A–4–2(E) is not unconstitutionally vague as applied to him. But *Kolender* does not assist Nolando in this case. In *Kolender* the defendant mounted a facial attack against a California "criminal statute that requires persons who loiter or wander on the streets to provide a 'credible and reliable' identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v. Ohio,* 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968)." *Kolender,* 461 U.S. at 353, 103 S.Ct. 1855. Despite United States Supreme Court precedent requiring an "as applied" analysis before evaluating whether a statute is unconstitutionally vague on its face, the majority concluded that the requirement of credible and reliable identification was facial-

ly vague and unconstitutional as it had been construed in California. *See id.* The Supreme Court in *Kolender* held the statute unconstitutional because it "vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute." *Id.* at 358, 103 S.Ct. 1855. The Supreme Court was especially concerned because the statute had the "potential for arbitrarily suppressing First Amendment liberties," as well as "the constitutional right to freedom of movement." *Id.* (internal quotation and citation omitted).

{17} In the present case, however, we are not concerned with encroachments on constitutionally protected conduct such as speech and movement. Nor are we concerned that the police have unbridled discretion in enforcing Section 32A–4–2(E). Rather, our concern in this case is whether Section 32A–4–2(E) provides sufficient notice of what conduct is prohibited. *See Kolender,* 461 U.S. at 357–58, 103 S.Ct. 1855 (explaining that the void-for-vagueness doctrine is concerned with actual notice and preventing arbitrary law enforcement). Because our concerns are significantly different from those that occupied the *Kolender* court, we find *Kolender* inapplicable and turn to our own case law for guidance. As noted above, where a defendant's conduct is clearly prohibited by a statute, that defendant cannot facially attack the statute. *See Ramos,* 116 N.M. at 127, 860 P.2d at 769; *see also Pierce,* 110 N.M. at 80, 792 P.2d at 412. Because we have already concluded that Section 32A–4–2(E) is constitutional as applied to Nolando, we will not consider whether this section might be facially unconstitutional.

**C.** *Appellants State No Claim for Unconstitutional Overbreadth*

{18} Our precedent indicates that an overbreadth challenge, which is a facial challenge, can be made only when a statute affects First Amendment rights. *See Pierce,* 110 N.M. at 81, 792 P.2d at 413; *State v. Gattis,* 105 N.M. 194, 198, 730 P.2d 497, 501 (Ct.App.1986). In this case, we have no First Amendment speech or association is-

sue. Appellants have not shown any basis for an overbreadth attack.

### III. The Court Did Not Err in Disallowing Witnesses

■ {19} Appellants contend that the court erred in disallowing character witnesses on reputation for truthfulness and an expert witness on the characteristics of abused children. Appellants failed to present any argument or authority in their briefs on the issue of the court's decision not to permit character witnesses. Thus, this issue is abandoned. *See State v. Sandoval,* 88 N.M. 267, 270, 539 P.2d 1029, 1032 (Ct.App. 1975) (holding that issues must be supported by argument and authority if they are not to be deemed abandoned).

■ {20} Regarding the expert witness, Appellants told the trial court that they wished to call an expert on the general characteristics of abused children and then asked the court for a further opportunity to address the issue if the court would find it helpful. The court denied the request. On appeal, Appellants argue that they wanted an expert witness to testify that Candice did not display characteristics of an abused child in order to counter a CYFD witness' testimony regarding recantation of the incident of abuse. That specific issue does not appear to have been brought to the trial court's attention sufficiently for the trial court to have made an informed ruling on it. *See State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App.1986) (requiring bringing specific issue to trial court's attention); *State v. Ortiz,* 88 N.M. 370, 375, 540 P.2d 850, 855 (Ct.App. 1975) (requiring offer of proof).

### IV. Appellants Failed to Provide Any Record To Prove That the Judge Should Have Recused Himself

■ {21} Appellants contend that the trial judge should have disclosed to Appellants certain relationships he had with the Children's Court Attorney and the guardian ad litem. Appellants argue that the judge should have recused himself pursuant to the standards in Rule 21–400 NMRA 1999, and that the judge abused his discretion in not recusing himself. None of the evidence pre-

sented to this Court on this issue is of record. Appellants did not raise the issue with the judge. Although Appellants did not learn of the relationships that they now protest until after entry of the court's judgment, Appellants did not attempt to reopen the court proceedings to press this issue. Appellants nevertheless ask this Court to consider their new allegations. We decline to do so. *See Graham v. Cocherell,* 105 N.M. 401, 404, 733 P.2d 370, 373 (Ct.App.1987) (explaining that this Court is "a court of review and [is] limited to a review of the questions that have been presented to and ruled on by the trial court"); *Dillard v. Dillard,* 104 N.M. 763, 765, 727 P.2d 71, 73 (Ct.App.1986) (reiterating that appellant has duty of providing an adequate record sufficient to review the issues on appeal); *State ex rel. Alleman v. Shoats,* 101 N.M. 512, 517, 684 P.2d 1177, 1182 (Ct.App.1984) (stating that matters not of record will not be considered on appeal).

### V. The Court Had Subject Matter Jurisdiction Over Nolando

{22} Nolando contends that as the stepfather of Candice, he does not come under the definition of "parent," "guardian," or "custodian." Therefore, he argues, the court did not have jurisdiction over him to enter a judgment affecting his rights through a petition alleging abuse or neglect.

{23} Under the Act, an abused child is one who has suffered abuse or other harm by the child's parent, guardian, or custodian. *See* § 32A–4–2(B). A neglected child is one who has been neglected by the child's parent, guardian, or custodian. *See* NMSA 1978, § 32A–4–2(C) (1995).

{24} Parent, custodian, and guardian are defined in the Children's Code (the Code). Under NMSA 1978, § 32A–1–4(O) (1995), "parent" includes a biological or adoptive parent; under Section 32A–1–4(E), "custodian" means a person, other than a parent or guardian, who exercises physical control, care, or custody of the child; and under Section 32A–1–4(H), "guardian" means the person having the duty and authority of guardianship. " 'Guardianship' means the duty and authority to make important deci-

sions in matters having a permanent effect on the life and development of a child and to be concerned about the child's general welfare . . . ." Section 32A–1–4(I).

{25} Nolando argues that he is none of these. We disagree and, in particular, we hold that Nolando meets the definition of "custodian" for purposes of the Act.

■ {26} Nolando is Candice's stepfather. Nolando signed a treatment plan before the court proceedings began that aimed to "reunite this family," and that required Nolando to provide adequate financial support to meet his family's basic needs, to ensure that his family had adequate transportation, and to have supervised visits with his daughters, among other things. Nolando lived in the same home with Patricia and Candice, as well as three other children, for several years. Nolando gave advice and input and assistance in regard to Candice's upbringing. He also disciplined Candice. Patricia corroborated these facts. Thus, Nolando engaged in, and agreed to continue to engage in, at least the physical control and care of Candice. We see no reason why a stepparent who resides in the home and exercises such care and control of the child should not be subject to the jurisdiction of the court as a custodian.

{27} Nolando nowhere demonstrates why the facts do not bring him within the Code's definition of custodian. Nolando does cite three cases in support of his position: *Lane v. Lane*, 1996–NMCA–023, ¶ 9, 121 N.M. 414, 912 P.2d 290 (a stepparent husband had a right to custody only if he were the child's natural father); *Rhinehart v. Nowlin*, 111 N.M. 319, 324, 805 P.2d 88, 93 (Ct.App.1990) (stating that a stepparent's right to visitation does not translate into a right to custody); and *Harper v. New Mexico Department of Human Services, Income Support Division*, 95 N.M. 471, 473, 623 P.2d 985, 987 (1980) ("a non-adoptive stepfather has no legal obligation to support his non-adopted stepchildren"). These cases cannot extract Nolando from his role as custodian. That Nolando had no right of legal custody and no legal obligation to support Candice is immaterial. The definition of custodian is broad and does not specifically require or even contemplate an attendant legal right of custody or legal duty to support. Although the Act uses the words "legal custodian" when granting a right to inspect and receive information in connection with an investigation of abuse and neglect, *see* NMSA 1978, § 32A–4–33(C) (1993), this isolated use of "legal custodian" does not require us to construe the Code's definition of "custodian" to include a legal duty. Appellants' cases do not protect Nolando from the court's jurisdictional reach, derived from our Legislature's clear intent to assure that the child is safe in the home and with the family. In sum, the court had subject matter jurisdiction over Nolando as a custodian.

## VI. *The Court Was Not Required to Remove the Guardian Ad Litem*

{28} Appellants sought to remove the guardian ad litem because they believed the guardian ad litem was unwilling or unable to zealously represent the child's best interest. Appellants contended below that neither Candice nor the family wanted the guardian ad litem to continue representing Candice. Appellants' counsel argued that the guardian ad litem allowed Candice to be chased and harassed by the assistant district attorney at the preliminary hearing in the related criminal case against Nolando. Appellants also argued that the assistant district attorney was handing notes to the guardian ad litem during a hearing. Further, they argued that the guardian ad litem saw Candice on only two occasions, and that both interactions were brief and hostile.

{29} The guardian ad litem explained to the children's court that in her opinion, Candice had lied during the preliminary hearing in an attempt to extricate herself from the situation. Following Candice's recantation testimony at the preliminary hearing, the guardian ad litem told the court that her representation had been ineffective, and she expressed her concern that Candice had not had the benefit of an explanation of the consequences of taking the witness stand and lying. During the guardian ad litem's second visit with Candice, following the preliminary hearing, Candice made it very clear that she did not want the proceedings to go on and

that she wanted it all to go away. The guardian ad litem tried on at least three other occasions to meet with Candice at her school, but Candice was absent. After these several failed attempts to communicate with her client, the guardian ad litem came to the conclusion that Candice was extremely hostile and that it would be very difficult to talk to her. The guardian ad litem nevertheless made the decision to proceed with the case and the investigation without distressing her client further. The court denied Appellants' requests to remove the guardian ad litem.

{30} The Code provides that "[a] guardian ad litem shall zealously represent the child's best interests with respect to matters arising pursuant to the provisions of the Children's Code." NMSA 1978, § 32A–1–7 (1995). The guardian ad litem is charged with the dual duty of both representing the child's best interests and presenting the child's position to the court when the child's circumstances render it reasonable and appropriate to do so. *See* Section 32A–1–7(D). "Any party may petition the court for an order to remove a guardian ad litem on the grounds that the guardian ad litem has a conflict of interest and is unwilling or unable to zealously represent the child's best interest." Section 32A–1–7(C).

■ {31} Appellants argue that the guardian ad litem's hostile confrontations with Candice, minimum contact with her, and calling Candice a liar on the record, are reasons strong enough to have required the court to remove the guardian ad litem. The guardian ad litem had no duty, however, to advance Candice's recantation or revisionist story, if she did not believe it. Nor did the guardian ad litem exhibit any conflict of interest or unwillingness or inability to zealously represent Candice's best interests when expressing concern about or describing Candice's change of story. Obviously, the guardian ad litem did not think it appropriate or reasonable to advance Candice's revised story. Appellants do not detail conduct or confrontations between Candice and the guardian ad litem that rise to any level of personal conflict or inappropriate personal agenda that would raise a serious question about the guardian ad litem's ability to ad-

vance independent and rational positions to the court and to give independent and rational advice to Candice.

■ {32} We do not find the evidence presented and argued by Appellants to have required the children's court, under the abuse of discretion standard, to remove the guardian ad litem from representation of Candice. Nor do we conclude, as Appellants assert, that the guardian ad litem's perception of Candice's best interests was "so incongruous with the child's position that the guardian ad litem absolutely refuses to present the child's position." *State ex rel. Children, Youth & Families Dep't v. Marian M. & Concerning Esperanza M.*, 1998–NMCA–039, ¶ 39, 124 N.M. 735, 955 P.2d 204.

■ {33} Moreover, Appellants fail to point to any evidence that shows that they were prejudiced by the conduct of the guardian ad litem or that their interests were adversely affected to a degree that would cause us to be concerned about the fairness or propriety of the determination of abuse and neglect. *See In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Under these circumstances, there was no reversible error in the failure to remove the guardian ad litem.

**VII.** *The Court Did Not Err in Admitting the Partially Inaudible Audio Tape*

■ {34} Appellants contend that an audio tape recording of a statement by Nolando was inaudible in several portions and that, therefore, its admission, as well as the admission of a transcript of the audible parts of it, was prejudicial error. The district attorney's investigator who interviewed Nolando and recorded his statements testified that she did not destroy the tape; the inaudibility inexplicably occurred. The court admitted into evidence audible and understandable portions of the tape, as well as the portions that were inaudible. Appellants do not say how the admission of the tape prejudiced them. Without a showing of such prejudice, Appellants cannot complain about the admission of the tape. *See In re Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994

(Ct.App.1992) (stating that error will not be corrected on appeal unless it was prejudicial). Nor do Appellants show in what other way the court may have abused its discretion. *See State v. Apodaca,* 118 N.M. 762, 770, 887 P.2d 756, 764 (1994) (reviewing the admission of evidence for abuse of discretion). We find no abuse of discretion in admitting the tape.

**VIII.** *Records of Counseling Sessions Between Patricia and Her Counselor Are Not Privileged*

█ {35} Appellants contend that Patricia's counseling session with a counselor at Western New Mexico Counseling Services was privileged under Rule 11–504 NMRA 1995 through the application of specific statutes, namely, NMSA 1978, §§ 61–9A–27 (1993), and 61–31–24 (1989). Much of their argument is focused on whether the counselor is a person to whom the privilege would apply. However, we need not address that issue because the clear language of both the rule and the statutes permits disclosure in this abuse and neglect case.

{36} Rule 11–504(D) states:

**D. Exceptions.**

. . . .

(4) **Required report.** There is no privilege under this rule for communications relevant to any information that the physician, psychotherapist or patient is required by statute to report to a public employee or state agency.

Section 61–9A–27(C) states:

C. Nothing in this section shall be construed to prohibit a counselor and therapist practitioner from disclosing information in court hearings concerning matters of adoption, child abuse, child neglect or other matters pertaining to the welfare of children as stipulated in the Children's Code . . . .

Section 61–31–34(C) reads virtually identically with respect to licensed social workers. Pertinent provisions of the Code appear to require people like Patricia's counselor to report abuse or neglect to an appropriate authority and to remove any privilege that might otherwise apply here. *See* NMSA 1978, §§ 32A–4–3(A) (1997) and –5(A) (1995). Therefore, the trial court did not abuse its discretion in admitting the counseling records and testimony relating to them.

**IX.** *The Question Whether The Treatment Plan Was Privileged Under Rule 11–509 Is Not Properly Before this Court*

█ {37} Appellants contend that the court abused its discretion in admitting a treatment plan prepared by a CYFD social worker and signed by Nolando. Appellants objected to the admission of the treatment plan as privileged under Rule 11–509 NMRA 1999, which creates a privilege for communications made during a preliminary inquiry. *See* NMSA 1978, § 32A–4–4 (1993). They contend that treatment plans are a part of the CYFD preliminary inquiry, because they are based on confidential statements made in that inquiry. Appellants therefore conclude that the treatment plan in this case was privileged. Appellants advance a policy argument that Nolando's cooperation and admissions for the purpose of family reunification should not be used against Appellants to establish abuse and neglect.

{38} We need not decide whether the treatment plan was privileged under Rule 11–509, however, because Appellants have not pointed to any specific communications either in the treatment plan or otherwise that were "communications . . . made during the course of a preliminary inquiry" and that were relied on in any way in preparation of the treatment plan. Appellants fail to set out the specific statements upon which the treatment plan was based. Furthermore, Appellants have not developed anywhere in the record below whether any particular communication should, in fact, be considered "confidential" under Rule 11–509(A)(3). Only "confidential" communications made during the course of a preliminary inquiry are privileged. *See id.* On its face, the treatment plan contains no particular communication. It contains only statements of purpose, conclusions about abuse and neglect, and agreements by Nolando, Patricia, and Candice to abide by certain courses of action. Furthermore, Rule 11–509 does not tell us whether our Supreme Court intended treatment plans to be privileged if formulat-

ed based on information received during the preliminary inquiry investigation.

{39} Appellants have not cited any specific confidential communication they contend is privileged. Nor have they shown the improper disclosure of any confidential communication made during the preliminary inquiry. We, therefore, will not consider whether the treatment plan is a privileged communication under Rule 11–509.

### X. *The Court Did Not Err In Allowing the District Attorney to Attend Hearings*

{40} Appellants contend that because a criminal case was pending against Nolando, the court erred in allowing an assistant district attorney to attend the closed children's court hearing involving Nolando. In Appellants' opinion, the district attorney was using CYFD as a tool to gain confidential information for the criminal prosecution. Appellants assert that the assistant district attorney has no right to sit in on a children's court hearing.

{41} Abuse and neglect hearings are closed to the general public. *See* NMSA 1978, § 32A–4–20(B) (1999). The persons who are permitted to be present are "[o]nly the parties, their counsel, witnesses and other persons approved by the court." Section 32A–4–20(C). "Other persons approved by the court" are those persons that have "a proper interest in the case or in the work of the court." Those persons "may be admitted ... on the condition that they refrain from divulging any information that would identify the child or family involved in the proceedings." *Id.*

{42} District attorneys are specifically permitted under the Act (except in a limited circumstance not relevant here) to inspect

[a]ll records concerning a party to a neglect and abuse proceeding ... that are in the possession of the court or the ... [CYFD] as the result of a neglect or abuse proceeding or that were produced or obtained during an investigation in anticipa-

tion of or incident to a neglect or abuse proceeding....

Section 32A–4–33.

{43} We see no reason and Appellants cite no authority as to why the district attorney should not have been allowed to listen to the testimony in this closed children's court proceeding, given the permission of the court to do so. Unlike statutes that limit their coverage to specifically listed items or persons, this statute listed specific people permitted to attend the hearings as well as included a general category ("persons approved by the court"). Because the Legislature included the more general category, the lack of specific statutory language regarding the district attorney's right to listen to testimony in a closed hearing should not be interpreted as an intent by the Legislature to prohibit that activity. Therefore, we conclude that the Legislature intended the district attorney to be able to attend closed abuse and neglect proceedings as long as the court's permission was received.

{44} Furthermore, with a criminal case already pending against Nolando, there exists little potential for harm from wrongful disclosure by the district attorney of the identity of the family based on what he learns from testimony in the children's court proceeding. In addition, because the district attorney is entitled to inspect "all records" relating to the children's court proceeding, it is reasonable to conclude that he has the right under the Act to listen to tape recordings or to read transcripts of the testimony at the hearing and take verbatim notes of the testimony. Why not then, barring some good reason, allow the district attorney to sit in a hearing and listen?

{45} Finally, the Legislature has given the court discretion to permit persons to be present. Appellants have not shown us how the court abused its discretion and has not shown any prejudice. The argument that CYFD was simply a tool of the district attorney to gather information for the criminal case against Nolando provides no basis on which to find error. In sum, the court did not abuse its discretion or otherwise err in

permitting the assistant district attorney to attend the hearing and listen to testimony.

## CONCLUSION

{46}   We affirm the court on all grounds.

{47}   **IT IS SO ORDERED.**

PICKARD, C.J., and APODACA, J., concur.