HANISEE, Judge (dissenting). {34} I consider the term “every person,” as articulated in Section 32A-4-3(A), to mean any person who is aware of or reasonably suspects that a child is being abused. Under the statute’s plain directive, all such persons are duty-bound to report the ill-treatment of children to law enforcement or child protection authorities. The majority having concluded otherwise, I respectfully dissent. {35} Initially, I note that the language of the statute itself seems unmistakable. When there exists clarity of legislative intent, New Mexico caselaw compels a statute’s effectuation in a manner that avoids unnecessary interpretation and gives effect to language that is simple and unambiguous. See United Rentals Nw., Inc. v. Yearout Mech., 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 (“The first guiding principle in statutory construction dictates that we look to the wording of the statute and attempt to apply the plain meaning rule[.]” (internal quotation marks and citation omitted)). As the Majority Opinion points out, “[t]he words of a statute should be given their ordinary meaning, absent clear and express legislative intention to the contrary, as long as the ordinary meaning does not render the statute’s application absurd, unreasonable, or unjust.” Juan, 2010-NMSC-041, ¶ 37 (alteration, internal quotation marks, and citation omitted). Thus, in following the plain meaning rale, we will not read into a statute language that isn’t there, “especially when it makes sense as it is written.” Reule Sun Corp. v. Valles, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 (internal quotation marks and citation omitted). {36} Section32A-4-3(A) commences with the chosen phrase “Every person[.]” It then identifies and imposes upon a limited subset of such an otherwise unlimited grouping — those aware of crimes perpetrated upon a child — the responsibility to notify public officials that are authorized to stop the commission of, and protect victims from, such uniquely pernicious offenses. See id. No provision within the statute directly excludes any individual from the responsibility of mandated reporting. See § 32A-4-3. Nevertheless, the Legislature chose to emphasize the reporting responsibilities of certain categories of individuals by expressly announcing their inclusion within the general statutory directive. It is my view that this expression emphasized the breadth of, and does not impliedly constrict, the statute’s sphere of enforceability. {37} The Majority Opinion stumbles on what I perceive to be an ancillary and purposefully incomplete list of persons whose duty to report exists despite their employment in specified professions. By directly identifying some, but not all, to whom Section 32A-4-3 applies, the Legislature intended to make clear the statute’s application to people who may not otherwise be understood to fall within the broader penumbra of “every person.” It is telling that the professional responsibilities of each such specifically identified person may more frequently render them privy to information regarding child abuse, or would, in some instances, bestow a conflicting legal privilege or responsibility of confidentiality. Yet, like anyone else, they too are required to report known or reasonably suspected instances of child abuse. With the lone exception of legally privileged communications made to members of the clergy, there is simply no indication of exemption to be found within Section 32A-4-3(A). Based on established principles of statutory construction, and considering the nature of the occupations expressly required to comply with this section of the Abuse and Neglect Act, I conclude that the language “every person” in fact means everyone, as would ordinarily be understood. {38} Indeed, my approach is consistent with our own past observation regarding the breadth of the reporting requirement of this very statute. In In re Candice Y., 2000-NMCA-035, ¶¶ 35-36, 128 N.M. 813, 999 P.2d 1045, we held that aperson employed as a counselor cannot be prohibited from disclosing information regarding child abuse pursuant to NMSA 1978, Section 61-9A-27(C) (1993). In so ruling, we cited Section 32A-4-3, which we observed to “appear to require [a] counselor to report abuse or neglect to an appropriate authority and to remove any privilege that might otherwise apply here.” In re Candice Y., 2000-NMCA-035, ¶ 36. Notably, the Rule 11-504 privilege we determined to be “removed” by application of Section 61-9A-27(C), seeln re Candice Y., 2000-NMCA-035, ¶ 36, is the same privilege the majority determines today to be unaffected by Section 32A-4-3. See also Mendez, 2010-NMSC-044, ¶ 37 (noting without deciding that Section 32A-4-3(A) “requir[es] every person, including medical professionals ... to immediately report [child abuse] to authorities”). {39} My view is also reinforced by the fact that, like New Mexico, other states have enacted and interpreted similarly inclusive language in this context to apply to everyone. Both Texas and Florida have promulgated similar statutes that mandate all individuals, whether professional or layperson, to report crimes of child abuse or neglect to appropriate authorities. See Tex. Family Code Ann. § 261.101(a) (West 2013) (“A person having cause to believe that a child’s physical or mental health or-welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.” (emphasis added)); Fla. Stat. Ann. § 39.20l(l)(a-c) (West2013) (“Any person who knows or has reasonable cause to suspect that a child is abused, abandoned, or neglected . . . shall report such knowledge or suspicion to the department in the manner prescribed.” (emphasis added)). Courts of both states have interpreted their legislatures’ own broadly inclusive language to straightforwardly mean that people — any people — aware of child abuse are required to report it. See Rodriguez v. State, 47 S.W.3d 86, 89 (Tex. Ct. App. 2001) (concluding that those living in the same apartment with an abused child and had witnessed the abuse but failed to report it fell within the requirements of the mandatory reporting statute); Jett v. State, 605 So. 2d 926, 927 (Fla. Dist. Ct. App. 1992) (interpreting Fla. Stat. Ann. § 415.504(a)(1989), now renumbered as Section 39.201, and concluding that “[i]t appears that the legislature, in order to assure that the abuse is reported, has determined that everyone who has knowledge of [abuse] should report it”). Like in Texas and Florida, the “every person” language in our statute manifests our Legislature’s express intent to create an affirmative duty on all persons to report child abuse or neglect to appropriate authorities. {40} As well, I note that the Majority Opinion’s reliance on the doctrine of ejusdem generis is misplaced. Ejusdem generis instructs that “where general words follow an enumeration of persons or things of a particular and specific meaning, the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned.” State v. Office of Pub. Defender ex rel. Muqqddin, 2012-NMSC-029, ¶ 29, 285 P.3d 622 (emphasis added) (internal quotation marks and citation omitted). Black’s Law Dictionary provides a simple example to illustrate this doctrine, using the phrase “horses, cattle, sheep, pigs, goats, or any other farm animals}.]” Black’s Law Dictionary 594 (9th ed. 2009). The entry notes that despite the seeming breadth of the category of “any other farm animals,” this phrase would likely include only “four-legged hoofed mammals typically found on farms, and thus would exclude chickens” because “the general word or phrase will be interpreted to include only items of the same class as those listed.” Id. {41} This entry is in accord with our Supreme Court’s interpretation ofthe burglary statute in Muqqddin. See Muqqddin, 2012-NMSC-029, ¶¶ 29-31. That statute contains a string of specific listings followed by a general term: “Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling},] orother structure}.]”NMSA 1978, § 30-16-3 (1971). By limiting the meaning of the word “structure” to “other, similarly situated words in that same statute},]” our Supreme Court rejected a prior interpretation that failed to properly apply ejusdem generis. See Muqqddin, 2012-NMSC-029, ¶ 31. {42} But the statute at issue in this case is constructed differently than the burglary statute or other statutes to which ejusdem generis is intended to apply. Section 32A-4-3(A) is not a statute where general words follow the enumeration of words with a specific meaning. Rather, it first invokes a general term, “every person,” followed by the list of specific professionals. Id. Thus, this statute is not one that structurally falls within the purview of those to which ejusdem generis should be applied. Because our Supreme Court has recognized that “the use ofthe word ‘includes’ to connect a general clause to a list of enumerated examples demonstrates a legislative intent to provide an incomplete list of activities[,]” United Rentals Nw., 2010-NMSC-030, ¶ 13, we should decline to interpret the reporting statute as applying to anything other than its preceding generally defined category: “every personf.]” {43} Lastly, assuming without agreeing that the principle of ejusdem generis applies to this statute, the Majority Opinion’s reliance on Wilcox lends no meaningful support to its conclusion. Wilcox states that “[w]e have previously looked to a dictionary definition of the word that precedes ‘including’ to characterize the types of examples consistent with that key word.” 2012-NMCA-106, ¶ 13. However, in this case, if we look to the word that precedes “including,” we find the word “person.” If we then follow the Wilcox illustration and define “person” as set forth in Black’s Law Dictionary, we are informed that each is “a human being” and are provided with examples. Black's Law Dictionary 1257 (9th ed. 2009). Therefore,.even were we to apply the doctrine of ejusdem generis, as in Wilcox, we would still reach the same conclusion that the statutory language of “every person” applies to all people. {44} On the heels of its ejusdem generis analysis, the Majority Opinion evokes the rule of lenity to conclude that because the reporting requirement is enforced by application of criminal liability, the statute’s directive does not constitute an affirmative duty applicable to all. However, like New Mexico, Texas penalizes all non-reporters on the misdemeanor level. See Tex. Family Code Ann. § 261.109 (West 2013). Even more rigidly, Florida imposes criminal penalties on any person who fails to report at the felony level. See Fla. Stat. Ann. § 39.205(1) (West 2013). I do not agree that the fact that á non-reporter in New Mexico may be subjected to amisdemeanorpenalty provides support to the Majority Opinion’s constrictive reading of the statute. As well, our Supreme Court has cautioned that the rule of lenity applies only to statutory language in which “insurmountable ambiguity persists regarding the intended scope of a criminal statute.” Ogden, 1994-NMSC-029, ¶¶ 25-26 (stating also that “[a] criminal statute is not ambiguous for purposes of lenity merely because it is possible to articulate a construction more narrow than that urged by the Government” (emphasis, alteration, internal quotation marks, and citation omitted)). Here, it is the Majority Opinion itself that creates ambiguity by its use of the inapplicable principle of ejusdem generis to unnecessarily deconstruct the phrase “every person.” CONCLUSION {45} For the foregoing reasons, I would reverse the district court’s order. J. MILES HANISEE, Judge