J. S47044/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                   :           PENNSYLVANIA
                    v.               :
                                             :
JUSTIN CORLISS,                :           No. 108 EDA 2017
                                           :
            Appellant        :

Appeal from the Judgment of Sentence, October 7, 2016,
in the Court of Common Pleas of Monroe County
Criminal Division at Nos. CP-45-CR-0001749-2013,
CP-45-CR-0002173-2013

BEFORE:  LAZARUS, J., MOULTON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 08, 2017**

Appellant, Justin Corliss appeals, ***pro se***, from the October 7, 2016 judgment of sentence in the Court of Common Pleas of Monroe County. After careful review, we affirm.

A previous panel of this court recited the following factual history:

> [Appellant] operated a pet store in Monroe County. In 1993, [appellant] commenced a romantic relationship with his coworker, K.V. Shortly thereafter, [appellant] moved in the residence K.V. shared with her minor daughter, R.V. In 1995, when R.V. was approximately nine years old, [appellant] began to molest R.V. At first, [appellant] would tickle R.V. when they played together. [Appellant's] behavior escalated, however, and he began placing his hands down R.V.'s pants. [Appellant] digitally penetrated R.V. on multiple occasions between 1995 and 1997. The abuse occurred at K.V.'s residence, often while K.V. was in another room. On one occasion, [appellant] inappropriately touched R.V.

during a car trip to New York. The molestation continued until 1997, when [appellant] moved out of K.V.'s residence. R.V. did not immediately report the abuse.

In 1996, fourteen-year old [D.B.[1]] began to work at [appellant's] pet store. [D.B.]'s father was a regular customer at the pet store, and [appellant] had known [D.B.] since she was eleven years old. After [D.B.] started working at the pet store, [appellant] would tickle her. [Appellant's] behavior escalated, and he began placing his hands down [D.B.]'s pants. Eventually, [appellant] and [D.B.] engaged in sexual intercourse. [Appellant] also performed oral sex on [D.B.] on multiple occasions.

The abuse occurred at the pet store during regular business hours. On two occasions, [D.B.]'s twelve-year-old friend witnessed the sexual activity. [Appellant] also fondled [D.B.] during car trips to New York. [D.B.] testified that [appellant] took her on these trips "almost every single Monday" to pick up supplies for the pet store. In addition to the liaisons at work, [appellant] molested [D.B.] at K.V.'s residence at least once. In 1997, [D.B.]'s mother learned about the abuse and immediately informed the police.

At No. 743 of 1997, the Commonwealth charged [appellant] with multiple offenses related to the molestation of [D.B.] Following a trial in 1998, a jury convicted [appellant] of two (2) counts of statutory sexual assault and one (1) count each of aggravated indecent assault, indecent assault, and corruption of minors. On August 20, 1998, the [trial] court sentenced [appellant] to an aggregate term of four (4) to ten (10) years' imprisonment. This Court affirmed the judgment of sentence on November 30, 1999. ***See Commonwealth v.***

---

[1] At the time of appellant's 1998 trial, D.B. was known as D.G. For the purposes of continuity, we will refer to her as D.B. throughout this memorandum.

*Corliss*, 750 A.2d 366 (Pa.Super. 1999) (unpublished memorandum).

Prior to the start of the 1998 trial, [appellant] met C.T. at the pet store. [Appellant] and C.T. married, and C.T. became pregnant before [appellant's] sentencing hearing. C.T. gave birth to [appellant's] daughter, C.C., in 1999 while [appellant] was incarcerated. [Appellant] remained incarcerated until 2008. Upon his release, [appellant] returned to live with C.T. and C.C. C.T. had no concerns about [appellant] being around C.C., because [appellant] had convinced C.T. that he was actually innocent of the charges pertaining to [D.B.]

When [appellant] would play with C.C., C.T. noticed that [appellant] tickled the child and scratched the child's back. The tickling started to bother C.C., and she asked [appellant] not to touch her, but C.T. did not intervene. [Appellant's] relationship with C.T. ended in 2010, after C.T. discovered that [appellant] was having an affair with another teenager. In 2013, C.C. informed C.T. that [appellant] had molested her. C.C. claimed that [appellant] would put his hands down her pants and touch her vagina, exposed his penis to C.C., and attempted to force the child to perform oral sex on him.

Police arrested [appellant] for the offenses against C.C. in July 2013. The media reported on [appellant's] arrest, and R.V. saw the coverage. R.V. decided to contact police and inform them of the abuse she suffered from 1995 until 1997. At No. 1749 of 2013, the Commonwealth charged [appellant] with sex offenses committed against C.C. At No. 2173 of 2013, the Commonwealth charged [appellant] with sex offenses committed against R.V.[Footnote 1] On September 24, 2013, the Commonwealth informed [appellant] that Nos. 1749 and 2173 of 2013 would be joined for trial. [Appellant] filed counseled pretrial motions on October 3, 2013, including a motion to sever the cases. Ultimately, the [trial] court granted [appellant's] motion to sever the cases for trial.

> [Footnote 1:] At No. 1748 of 2013, the Commonwealth also charged [appellant] with offenses related to his failure to register with state police pursuant to Megan's Law. The matters of No. 1748 of 2013 are not at issue in this appeal.

*Commonwealth v. Corliss*, No. 2091 EDA 2014, unpublished memorandum (Pa.Super. filed July 14, 2015).

The trial court provided the following procedural history:

> [Appellant] was convicted by a jury on June 1, 2016 of various offenses following a trial in which these two (2) cases were consolidated. In case #1749 CR 2013, [appellant] was convicted of Count 1, Involuntary Deviate Sexual Intercourse With a Child; Count 2, Criminal Attempt Involuntary Deviate Sexual Intercourse With a Child; Count 3, Indecent Assault; Count 4, Indecent Exposure; Count 5, Incest; Count 6, Endangering the Welfare of a Child; and, Count 7, Corruption of a Minor.[2 Appellant] was convicted in case #2173 CR 2013 of Court 1, Aggravated Indecent Assault;[3] and Count 2, Aggravated Indecent Assault. . . .
>
> [Appellant] was deemed a sexually violent predator ("SVP") on September 29, 2016 following a hearing, which subjects him to mandatory lifetime sexual offender registration requirements. [Appellant] was then sentenced on October 7, 2016 in case #1749 CR 2013 to a total confinement of 360 months (30 years) minimum to 720 months (60 years) maximum. [Appellant] was sentenced on October 7, 2016 in case #2173 CR 2013 to a total confinement of 108 months (9 years) minimum to 216 months (18 years) maximum. The sentence in case #2173

---

[2] 18 Pa.C.S.A. §§ 3123(b), 901, 3126, 3127, 4302, 4304, 6301, and 3125, respectively.

[3] 18 Pa.C.S.A. § 3125.

was run consecutive to case #1749 for a total period of incarceration of 468 months (39 years) to 936 months (78 years). [Appellant] has filed timely post-sentence motions.

[Appellant] was initially represented in these matters by private counsel, Robert Saurman, Esquire, who filed omnibus pre-trial motions on behalf of [appellant. Appellant] then fired his legal counsel and proceeded *pro se* following a hearing in which a colloquy was given to [appellant] concerning his right to counsel, a listing of the offenses and maximum penalties if convicted, and that [appellant] was making a voluntary waiver of counsel. The Court also appointed stand-by counsel for [appellant. Appellant] then represented himself *pro se* in filing various motions and appeals to Orders. The matter was set for trial and [appellant] then retained private counsel prior to the start of trial.

[Appellant] terminated the services of his trial counsel soon after the trial, and again proceeded to represent himself following a hearing on his motion to proceed *pro se*. [Appellant] was given another colloquy on his *pro se* representation at that time. [Appellant] represented himself at sentencing held on October 7, 2016. Following sentencing, [appellant] filed post-sentence motions *pro se*. He then retained counsel to represent him on the post-sentence issues and counsel was afforded additional time to file any additional post-sentence motions. Counsel timely filed additional post-sentence motions. [Appellant] then filed a motion to proceed *pro se* once again, and his counsel also filed a motion to withdraw. Following a hearing held on November 23, 2016, and a colloquy placed on the record, [appellant] was allowed to proceed *pro se* on his post-sentence motions.

Trial court opinion, 12/15/16 at 1-3.

The trial court granted appellant's post-sentence motions in part and denied appellant's post-sentence motions in part. Specifically, appellant's

motion to reconsider his sentence for endangering the welfare of a child was granted, and his sentence was reduced from 2-4 years' incarceration to be served concurrently with his other sentences to 1-2 years' incarceration to be served concurrently with his other sentences. (Notes of testimony, 10/7/16 at 84; trial court order, 12/15/16).

Appellant filed a notice of appeal on January 3, 2017. The trial court ordered appellant to produce a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on January 4, 2017. Appellant timely complied with the trial court's order on January 20, 2017. On January 23, 2017, the trial court issued an opinion pursuant to Pa.R.A.P 1925(a).

Appellant raises the following issues for our review:

1. Whether a judgment of acquittal or an arrest of judgment must issue as to six crimes convicted of when the jury did not render a decision as to the challenged element of negating the statute of limitations.

2. Whether the testimony of complainant C.C. was sufficient to meet the elements of involuntary deviate sexual intercourse and incest.

3. Whether testimony of intercourse, that conflicts with incontrovertible DNA evidence, and other false testimony suborned by ADA Rakaczewski from bad acts witness Danielle Brink, violates the 5th, 6th, and 14th Amendments to the U.S. Constitution requiring the conviction to be vacated.

4.     Whether the trial court's representation of the exculpatory DNA evidence is violative (sic) of the right to due process of law.[4]

5.     Whether Rakaczewski's deliberate omission of exculpatory evidence and known credibility challenges, as to complainant C.C., violated [appellant's] right to due process of law, as guaranteed through the U.S. Constitution, warranting that the conviction and sentence be vacated.

Appellant's brief at 4.

**I.**

In his first issue, appellant raises the issue of whether the jury was provided with proper instructions pertaining to the statute of limitations. Specifically, appellant avers that the statute of limitations had expired for the following charges: aggravated indecent assault, indecent assault, indecent exposure, corruption of minors, and endangering the welfare of children. (**See** appellant's brief at 10-11.)

A statute of limitations defense is properly raised prior to trial in an omnibus motion to dismiss the charges. **Commonwealth v. Corban Corp.**, 909 A.2d 406, 411 (Pa.Super. 2006), **affirmed**, 957 A.2d 274 (Pa. 2008), citing **Commonwealth v. Rossetti**, 863 A.2d 1185, 1190 (Pa.Super. 2004), **appeal denied**, 878 A.2d 864 (Pa. 2005); **Commonwealth v. Groff**, 548 A.2d 1237, 1244 (Pa.Super. 1988). "The Commonwealth bears the burden to establish that a crime as charged was committed within the applicable

---

[4] Issue 4 is identified by appellant as a "subquestion" under his third issue.

statute of limitations period." **Corban Corp.**, 909 A.2d at 411, citing **Groff**, 548 A.2d at 1248. A defendant must raise a statute of limitations defense pretrial; otherwise, the defense is waived. **Id.** at 1245 n.8, citing **Commonwealth v. Darush**, 459 A.2d 727, 730 n.4 (Pa. 1983).

> If the statute of limitations defense poses a question of law, the judge may decide the issue pretrial or at an appropriate time during trial. If the statute of limitations poses a question of fact, the judge should not decide the question but should present the question for jury consideration.

**Groff**, 548 A.2d at 1248, n.8. "Where the date of discovery of criminal acts is unrebutted, the issue of whether the statute of limitations for prosecution has run is a question of law for the trial judge." **Corban Corp.**, 909 A.2d at 410, citing **Commonwealth v. Hoffman**, 398 A.2d 658, 661 (Pa.Super. 1979).

Upon a review of the record, we find that appellant properly raised a statute of limitations defense when he filed a **pro se** amended omnibus pretrial motion on January 21, 2014, seeking dismissal of the following charges due to the expiration of the statute of limitations: indecent assault, indecent exposure, endangering the welfare of children, and corruption of minors. Accordingly, appellant has sufficiently preserved this issue for appellate review, and we shall review this issue on its merits.

Appellant, citing 42 Pa.C.S.A. § 5552(a), avers that the Commonwealth failed to initiate criminal proceedings against appellant within the statutory two-year time period. Appellant's reliance, however, is

misplaced. The Commonwealth charged appellant with four offenses subject to the exceptions to the two-year statute of limitations found in 42 Pa.C.S.A. § 5552(c)(3). Subsection 5552(c)(3) provides, in relevant part,

> (3) Any sexual offense committed against a minor who is less than 18 years of age any time up to the later of the period of limitation provided by law after the minor has reached 18 years of age or the date the minor reaches 50 years of age. . . .

42 Pa.C.S.A. § 5552(c)(3).

Appellant further avers that the Commonwealth failed to "allege any statement in the Information as to any claimed tolling or an exception to the statute of limitations . . . ." (Appellant's brief at 13.) Our supreme court has held, however, that the Commonwealth is not required to include any notice of tolling or exceptions to the statute of limitations in the criminal information, so long as the defendant is not prejudiced. *Commonwealth v. Stockard*, 413 A.2d 1088, 1092 (Pa. 1980). Specifically, the court stated:

> The fact that the Commonwealth did not allege in the [complaint] that it would seek to toll the statute of limitations is of no consequence [if] there is no prejudice to [defendant.] The Commonwealth did inform [defendant] of the tolling of the statute of limitations when the Commonwealth filed its answer to [defendant's] motion to dismiss the complaint. . . . As long as a defendant, some reasonable time before trial, is [apprised] that the Commonwealth will seek to toll the statute of limitations, the due process requirements of notice are met.

*Id.*, quoted by *Commonwealth v. Morrow*, 682 A.2d 347, 349 (Pa.Super. 1996), *appeal denied*, 693 A.2d 587 (Pa. 1997). In *Morrow*, similarly to

the defendant in **Stockard**, the Commonwealth responded to an omnibus pretrial motion seeking dismissal on the grounds of the expiration of the statute of limitations with a written notice of intention to toll the statute. **Id.** This court found that the defendant was not prejudiced, as he was "adequately and timely informed of the Commonwealth's intentions," prior to trial." **Id.** In **Commonwealth v. Russell**, 938 A.2d 1082, 1088 (Pa.Super. 2007), **appeal denied**, 956 A.2d 434 (Pa. 2008), this court reaffirmed that the Commonwealth satisfies the notice requirement so long as it notifies the defendant of its intention to toll the statute of limitations at a reasonable time before trial.

Here, appellant filed an amended omnibus pretrial motion on January 21, 2014. The Commonwealth subsequently filed a written notice of tolling of the statute of limitations on February 24, 2014 -- over two years before the start of trial on May 31, 2016. We, therefore, find that the Commonwealth provided adequate written notice of its intent to toll the statute of limitations within a reasonable time before trial. Accordingly, appellant's first issue is without merit.

## II.

Appellant next challenges the sufficiency of the evidence, particularly as it pertains to C.C.'s testimony relating to appellant's convictions of involuntary deviate sexual intercourse ("IDSI") and incest.

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most

- 10 -

favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, the Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Stokes*, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted), *appeal denied*, 89 A.3d 661 (Pa. 2014). The Commonwealth may satisfy its burden of proving a defendant's guilt beyond a reasonable doubt by using wholly circumstantial evidence. *Commonwealth v. Diggs*, 949 A.2d 873, 877 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009).

This court has also previously stated that the uncorroborated testimony of a victim of a sexually based offense is sufficient to uphold a conviction, so long as the testimony is believed by the trier-of-fact. *Commonwealth v. Trippett*, 932 A.2d 188, 194 (Pa.Super. 2007), citing *Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa.Super. 2006). A fact-finder is free to believe all, part, or none of the evidence, including uncorroborated testimony, presented. *Commonwealth v. Mosley*, 114 A.3d 1072, 1087 (Pa.Super. 2015) (citations omitted), *appeal denied*, 166

A.3d 1215 (Pa. 2017). Therefore, how much credibility and weight is given to the uncorroborated testimony is fully within the exclusive purview of the fact-finder.

In the instant case, after reviewing the evidence presented, cast in the light most favorable to the Commonwealth, as verdict winner, we find that the evidence is sufficient to warrant the jury's convictions for IDSI and incest.

IDSI is defined, in relevant part, as:

> **(b) Involuntary deviate sexual intercourse with a child.--**A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3123(b). The General Assembly defined "deviate sexual intercourse" as:

> [s]exual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures.

18 Pa.C.S.A. § 3101; *see also Commonwealth v. Kelley*, 801 A.2d 551, 555 (Pa. 2002), citing *Commonwealth v. Lee*, 638 A.2d 1006 (Pa.Super. 1994), *appeal denied*, 647 A.2d 898 (Pa. 1994) (interpreting sexual intercourse and deviate sexual intercourse to include acts of oral and anal sex).

During the trial, C.C. testified that she was born on February 16, 1999, and was 17 years old at the time of trial. (Notes of testimony, 5/31/16 at 88.) At the time that appellant lived with C.C., C.C. was 10 years old. (*Id.* at 89.) C.C. also testified that appellant touched her chest and vagina, exposed his penis, tried to place his penis in her mouth, and put his mouth directly on her vagina. (*Id.* at 94-95.) We find that this testimony supports the jury's guilty verdict for IDSI. *See generally Commonwealth v. Mawhinney*, 915 A.2d 107, 111 (Pa.Super. 2006), *appeal denied*, 932 A.2d 1287 (Pa. 2007) (finding that the victim's testimony describing elements of IDSI is sufficient evidence to warrant conviction).

Appellant next avers that the Commonwealth failed to sufficiently prove the elements of incest to warrant a conviction. Specifically, appellant claims that a civil finding by default establishing paternity of C.C. does not "prove[] paternity beyond a reasonable doubt," and that such a question should have been submitted to the jury. (Appellant's brief at 26.) Upon a review of the record, however, that question was submitted to the jury. During the trial court's jury instructions, the jury was instructed that it was required to find, beyond a reasonable doubt, that appellant "had sexual intercourse with a descendant of the whole or half blood. This relationship includes blood relationships with regard to legitimacy." (Notes of testimony, 6/1/16 at 86.) Our supreme court has held that juries are presumed to follow the instructions of the court. *Commonwealth v. Brown*, 786 A.2d

961, 971 (Pa. 2001), **cert. denied**, 537 U.S. 1187 (2003). Our review of the record reflects that the Commonwealth sufficiently presented evidence proving beyond a reasonable doubt that C.C. is appellant's natural daughter, and appellant's claim is without merit.

Appellant further avers that incest is a lesser included offense to IDSI, and that the two offenses merge for sentencing purposes. Incest is defined as:

> **(a) General rule.--**Except as provided under subsection (b), a person is guilty of incest, a felony of the second degree, if that person knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood.
>
> **(b) Incest of a minor.--**A person is guilty of incest of a minor, a felony of the second degree, if that person knowingly marries, cohabits with or has sexual intercourse with a complainant who is an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood and:
>
> (1) is under the age of 13 years . . .
>
> **(c) Relationships.--**The relationships referred to in this section include blood relationships without regard to legitimacy, and relationship of parent and child by adoption.

18 Pa.C.S.A. § 4302.

A court is precluded "from merging sentences when each offense contains a statutory element that the other does not." **Commonwealth v.**

***Raven***, 97 A.3d 1244, 1250 (Pa.Super. 2014), ***appeal denied***, 105 A.3d 736 (Pa. 2014), citing ***Commonwealth v. Baldwin***, 985 A.2d 830, 834 (Pa. 2009). In ***Commonwealth v. White***, this court found that "the Commonwealth suffered two injuries" through the defendant's single act when he engaged in forcible sexual intercourse (rape) and engaged in sexual intercourse with a descendant (incest). 491 A.2d 252, 256 (Pa.Super. 1985).

Here, we find that appellant's convictions for IDSI and incest do not merge for sentencing purposes. Much like the defendant in ***White***, the Commonwealth suffered two injuries as a result of appellant's conduct pertaining to C.C. The Commonwealth first suffered an injury when appellant engaged in involuntary deviate sexual intercourse, as was established by C.C.'s testimony. During the same act, the Commonwealth suffered further injury because appellant engaged in sexual intercourse with his natural daughter. Accordingly, we find that incest is not a lesser included offense to IDSI, and that the two convictions do not merge for sentencing purposes. Accordingly, appellant's second issue is without merit.

## III.

In his third issue for our review, appellant specifically avers that the Commonwealth "provided no discovery relevant to [D.B's] anticipated testimony, and refused to correct her perjury at trial as [the Commonwealth] actually elicited it." (Appellant's brief at 29.) For this

claim, appellant relies on a report dated March 1, 2017 purporting to

"'exclude' [appellant] as the donor of any DNA found in [D.B.'s] underwear."

(*Id.* at 36.)  Appellant also relies on the fact that he was not convicted on all

charges brought against him by the Commonwealth at the 1998 trial

pertaining to his encounters with D.B.

We shall first analyze appellant's claim pertaining to the March 1, 2017

DNA report.  The report is not found within the record that was certified by

the trial court.

> The fundamental tool for appellate review is the official record of the events that occurred in the trial court.  ***Commonwealth v. Williams***, 715 A.2d 1101, 1103 (Pa. 1998).  To ensure that an appellate court has the necessary records, the Pennsylvania Rules of Appellate Procedure provide for the transmission of a certified record from the trial court to the appellate court.  ***Id.***  The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal.  ***Commonwealth v. Bracalielly***, 658 A.2d 755, 763 (Pa. 1995); ***Commonwealth v. Baker***, 614 A.2d 663, ,672 (Pa. 1992); ***Commonwealth v. Quinlan***, 412 A.2d 494, 496 (Pa. 1980); ***Commonwealth v. Young***, 317 A.2d 258 (Pa. 1974).  Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue.  ***Commonwealth v. Walker***, 878 A.2d 887, 888 (Pa.Super. 2005).  In this regard, our law is the same in both the civil and criminal context because, under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record.  ***Commonwealth v. Kennedy***, 868 A.2d 582, 593 (Pa.Super. 2005); ***Lundy v. Manchel***, 865 A.2d 850, 855 (Pa.Super. 2004).  The

> emphasis on the certified record is necessary because, unless the trial court certifies a document as part of the official record, the appellate judiciary has no way of knowing whether that piece of evidence was duly presented to the trial court or whether it was produced for the first time on appeal and improperly inserted into the reproduced record. Simply put, if a document is not in the certified record, the Superior Court may not consider it. *Walker*, 878 A.2d at 888.

*Commonwealth v. Preston*, 904 A.2d 1, 6-7 (Pa.Super. 2006), *appeal denied*, 916 A.2d 632 (Pa. 2007).

Because the March 1, 2017 report is not part of the certified record, we cannot consider the contents of the report when deciding appellant's third issue.

We next turn to appellant's contention that the Commonwealth suborned perjury by presenting testimony from D.B. pertaining to encounters with appellant in which appellant was acquitted of charges brought by the Commonwealth. Specifically, appellant relies on the fact that the 1998 jury, while convicting him of two counts of statutory sexual assault and one count each of aggravated indecent assault and corruption of minors, also acquitted him of one count of statutory sexual assault, two counts of aggravated indecent assault, and three counts each of indecent assault and corruption of minors. Appellant, accordingly, claims that "an alibi witness rendered [D.B.'s] claims patently false as that jury rejected sixty-six percent (66%) of her claims and properly acquitted [appellant] thereof . . ." (Appellant's brief at 30.)

We disagree with appellant's reliance on the 1998 jury's verdict. This court's decision in **Commonwealth v. Ardinger**, 839 A.2d 1143 (Pa.Super. 2003), is particularly instructive. In **Ardinger**, the Commonwealth sought to introduce testimony from an alleged victim and the victim's mother in an attempt to establish evidence of a common plan pursuant to Pa.R.E. 404(b)(2). **Id.** at 1144. Both the victim and his mother were to provide testimony of an incident that occurred in Maryland, for which the defendant was charged, but not convicted, at the time of the Pennsylvania proceedings. **Id.** This court reiterated that "'Pa. R. Evid. 404(b) is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior crimes and prior wrongs and acts, the latter of which, by their nature, often lack "definitive proof."'" **Id.**, quoting **Commonwealth v. Lockcuff**, 813 A.2d 857, 861 (Pa.Super. 2002), **appeal denied**, 825 A.2d 638 (Pa. 2003).

The **Ardinger** court further explained that it was up to the jury sitting for Mr. Ardinger's trial to determine the credibility of the victim and his mother as they testified regarding the charges pending in Maryland. **Ardinger**, 839 A.2d at 1146. Additionally, this court noted that both witnesses would be subject to cross-examination that could "include questions which will enable the jury to know that the charges against [Mr. Ardinger] in Maryland have not yet resulted in a conviction." **Id.**

In the instant appeal, it was within the jury's sole purview to determine the credibility of D.B.'s testimony. Likewise, appellant's trial counsel had the opportunity on cross-examination to include questions that would enable the jury to know that appellant was not convicted of all charges against him at the 1998 trial.

Additionally, we disagree with appellant's claim that his acquittal of several charges in 1998 is tantamount to the jury finding D.B.'s testimony to not be credible. This court has previously cautioned that

> an acquittal cannot be interpreted as a specific finding in relation to some of the evidence presented; and acquittal may represent the jury's exercise of its historic power of lenity; and a contrary rule would abrogate the criminal procedural rules that empower a judge to determine all questions of law and fact as to summary offenses.

*Commonwealth v. Barger*, 956 A.2d 458, 461 (Pa.Super. 2008) (*en banc*), *appeal denied*, 980 A.2d 109 (Pa. 2009), citing *Commonwealth v. Wharton*, 594 A.2d 696, 698-699 (Pa.Super. 1991), *Commonwealth v. Yachymiak*, 505 A.2d 1024, 1026-1027 (Pa.Super. 1986).

Therefore, we find that determining the credibility of D.B.'s bad acts testimony was within the sole purview of the jury sitting in appellant's 2016 trial, and accordingly, appellant's third issue is without merit.

**IV.**

In his fourth issue for our review, appellant avers that "the trial court's representation of the exculpatory DNA evidence is [in violation] of the right to due process of law. (Appellant's brief at 40-47.) Appellant, however, failed to include this issue in his concise statement of errors complained of on appeal.

> [I]t is well-settled that issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived. ***Krebs v. United Refining Co. of Pa.***, 893 A.2d 776, 797 (Pa.Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived."). With respect to issues not included in a concise statement, our Supreme Court has instructed that this Court has no discretion in choosing whether to find waiver. Waiver is mandatory, and this Court may not craft ***ad hoc*** exceptions or engage in selective enforcement. ***City of Philadelphia v. Lerner***, 151 A.3d 1020, 1024 (Pa. 2016), quoting ***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011).

***In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa.Super. 2017).

We, therefore, find that appellant's fourth issue is waived, as he failed to include the issue in his concise statement of errors complained of on appeal.

**V.**

In his final issue, appellant alleges prosecutorial misconduct in that the Commonwealth deliberately omitted exculpatory evidence and "known credibility challenges" as to C.C.'s testimony. (**See** appellant's brief at 47-55.) In essence, appellant is alleging that the Commonwealth committed a **Brady** violation. **See Brady v. Maryland**, 373 U.S. 83 (1963).

> [Our supreme court] summarized the law in **Brady** in **Commonwealth v. Strong**, 761 A.2d 1167 (Pa. 2000):
>
>> In **Brady**, the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused. . . . The **Brady** court established the obligation of the prosecution to respond affirmatively to a request for production of exculpatory evidence with all evidence material to the guilt or punishment of the accused. Where evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred.
>
> **Id.** at 1171 (citations and footnote omitted).
>
> In **United States v. Bagley**, 473 U.S. 667, 677 (1985), the Supreme Court concluded that "impeachment evidence . . . as well as exculpatory evidence, falls within the **Brady** rule," and held that, regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government "if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** at 682. **See Strong**, **supra** at 1771 ("As **Brady** and its progeny dictate, when the

failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted." (citing *Bagley*)); *see also Commonwealth v. Moose*, 602 A.2d 1265, 1272 (Pa. 1992) ("When the reliability of a witness may be determinative of guilt or innocence, non-disclosure of evidence affecting that witness's credibility runs afoul of *Brady*'s disclosure requirement.").

In determining whether a reasonable probability of a different outcome has been demonstrated, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). A "reasonable probability" of a different result is shown when the government's suppression of evidence "undermines confidence in the outcome of the trial." *Bagley*, *supra* at 678. The United States Supreme Court has made clear that *Bagley*'s materiality standard is not a sufficiency of the evidence test. *Kyles*, *supra* at 434. A *Brady* violation is established "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, *supra* at 435. Importantly, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense. *Commonwealth v. McGill*, 832 A.2d 1014, 1019 (Pa. 2003). "[I]n order to be entitled to a new trial for failure to disclose evidence affecting a witness'[s] credibility, the defendant must demonstrate the reliability of the witness may well be determinative of his guilt or innocence." *Commonwealth v. Johnson*, 727 A.2d 1089, 1094 (Pa. 1999). In assessing the significance of the evidence withheld, a reviewing court must bear in mind that not every item of the prosecution's

case would necessarily have been directly undercut had the **Brady** evidence been disclosed. **Kyles**, **supra** at 451.

**Commonwealth v. Weiss**, 986 A.2d 808, 814-815 (Pa. 2009) (citations reformatted).

**Brady**, however, does not relieve a defendant of his duty to perform due diligence and conduct reasonable investigation in his own defense. Indeed, our supreme court has stated that, "[i]t is well established that 'no **Brady** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence.'" **Commonwealth v. Spotz**, 896 A.2d 1191, 1248 (Pa. 2006), citing **Commonwealth v. Morris**, 822 A.2d 684, 696 (Pa. 2003).

Appellant provides the following litany of evidence that he avers was improperly withheld by the Commonwealth:

> a. [Appellant] resided with C.C. from August 2008 until June 10, 2010. Yet, from August 2008 until July of 2013 no claim of indecent assault or inappropriate sexual conduct is made to any person whatsoever.
>
> b. After separation from C.C.'s mother, [C.T.], in June of 2010, a number of legal filings were made in custody and for a protection from abuse order that was abandoned.
>
> . . . .
>
> c. When pressed at the preliminary hearing C.C. admitted:

> "Well, he did ignore me. Like, mostly, he ignored me in the beginning, but toward the end he just ignored everyone." [N.T. 7/30/13 at 19.]

d. C.C.'s mother [C.T.] made numerous fraudulent claims in Protection from Abuse petitions, two of three filings were withdrawn.

e. C.C.'s mother [C.T.] had a pattern of non-compliance with mandatory notice to the custody court regarding her living arrangements, location and schooling of C.C. and then kidnapped C.C. to Hawai'i.

f. Ultimately, [C.T.]'s fraud in support was revealed, and no Judge, Higgins vacated a support order, in [appellant's] favor, when asked why she refused to appear at support master hearings, she lied, claiming C.C. was sick those days.

g. Only when [appellant] moved to verify [C.T.]'s fraud to Judge Higgins did the lies get advanced of inappropriate conduct by [appellant], in July of 2013.

h. Judge Higgins' support order aptly reflects [C.T.]'s lie of C.C. being home sick, upon subpoena, evidence from C.C.'s school attendance verifies that [C.T.] lied.

i. While awaiting trial, [C.T.] had kidnapped C.C. and fled to Hawai'i, when [appellant] petitioned the custody court over this, [ADA] Rakaczewski sought free legal representation for her, rather than properly prosecute her or ensure the safety of the child.

j. In the affidavit of probable cause C.C.'s story is that [appellant's] penis does <u>not</u> enter her mouth, a claim she repeats on interview at the child advocacy center and at the preliminary

> hearing; however, at trial she changes her story and [ADA] Rakaczewski did nothing to inform the jury of C.C.'s prior claims.

Appellant's brief at 48-50 (citations omitted).

Appellant fails to enumerate any evidence that the Commonwealth improperly suppressed to which he did not have equal access and/or could have obtained by exercising reasonable diligence. Indeed, in several of the items listed above, appellant avers that the Commonwealth improperly suppressed information that was obtainable from the transcript of appellant's preliminary hearing. Upon an exercise of reasonable diligence, appellant's trial counsel could have easily confronted C.C. with any inconsistencies found in the preliminary hearing transcript.

Appellant also avers that C.T. and C.C. sent him letters and e-mails, which were improperly suppressed by the Commonwealth. Appellant, as the recipient of the letters and e-mails in question, had equal access to these documents, and his trial counsel could have used these documents on cross-examination.

Finally, appellant avers that the Commonwealth improperly withheld filings from appellant's litigation with C.T. pertaining to custody of C.C. As a party to that litigation, appellant would have been served with any and all filings from C.T., and accordingly would have had access to those documents for impeachment purposes during trial.

We find that appellant had equal access to and/or could have, with the exercise of reasonable diligence, obtained all of the evidence that he avers was improperly withheld by the Commonwealth. Accordingly, the Commonwealth did not violate the rule set forth in **Brady**, and appellant's fifth issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2017